**GOLDEN GRAIN MACARONI
CO., Inc. et al.**

v.

**UNITED STATES.
No. 13713.**

United States Court of Appeals
Ninth Circuit.

Dec. 28, 1953.

Pomeroy, Yothers, Luckerath & Dore, Robert A. Yothers, Seattle, Wash., for appellants.

Charles P. Moriarty, U. S. Atty., J. Charles Dennis, Seattle, Wash., Arthur A. Dickerman, attorney, Food & Drug Administration, Los Angeles, Cal., of counsel, for appellee.

Before STEPHENS and HEALY, Circuit Judges, and DRIVER, District Judge.

HEALY, Circuit Judge.

Appellant Golden Grain Company is a California corporation doing business at Seattle, and appellant Dedomenico is its president and the general manager of its Seattle plant. The corporation manufactures and sells various types of macaroni, spaghetti, and other similar food products. In a six-count indictment the appellants were jointly charged with violations of the Federal Food, Drug and Cosmetic Act by causing adulterated foods to be introduced into interstate commerce. The indictment specifically alleged that the foods in question consisted in part of filthy substances such as

insect larvae or fragments of insects, and had been prepared, packed, and held under insanitary conditions whereby they may have been contaminated with filth. The charges were laid under 21 U.S.C.A. § 342(a) (3) and (4).[1] On a trial to the court without a jury each defendant was convicted on counts two to six, acquitted on count one, and sentenced to pay a fine of $5,000.

Appellants argue or suggest a variety of grounds for reversal, only a few of which are worthy of notice. One is that the evidence on behalf of the government was obtained illegally in that the officers designated by the Administrator to enter and inspect the plant did not first request and obtain permission to do so. The statutory provision invoked is section 704 of the Act, 21 U.S.C.A. § 374, which grants authority to enter and inspect for enforcement purposes "after first making request and obtaining permission of the owner, operator, or custodian" of the factory, warehouse, or establishment involved. The showing on this subject is as follows:

On July 18, 1951, Inspectors Shallit and Allen came to the plant, appellant Dedomenico being then absent in California. The two identified themselves to the lady receptionist, asked for Dedomenico, and were informed of his absence. Shallit requested permission to make an inspection and was told by the receptionist that Mr. McDiarmid was in charge of the plant but that he was not in at the moment but was expected down shortly. McDiarmid, it appears, was the Company's sales manager. Shallit then inquired who might grant permission, and the receptionist replied that she would inquire of Mr. Mulvaney, who appears to have been in charge of production. She left and shortly returned, informing the inspectors that Mulvaney "didn't feel that he had authority to grant permission to make the inspection." The officers waited for McDiarmid, who on arrival granted the permission requested. The inspection was made July 18 and 19. It appears that Dedomenico had departed for California on June 28, 1951 and that he returned July 25 following. A few days after his return the same officers appeared for the purpose of a second inspection for which Dedomenico readily gave his permission. On cross-examination at the trial Dedomenico said that had he been present at the time of the first inspection he would have given permission to make it.

■ The trial court ruled that on July 18 and 19 McDiarmid was custodian of the plant in the sense of the statute and that there had been no disregard of the statutory directive. The ruling was obviously not error. McDiarmid was held out to the officers as the person in charge, and he acted as such. The authority of the Administrator to make investigations of this nature is broadly granted. See 21 U.S.C.A. § 372(a), and consult Research Laboratories v. United States, 9 Cir., 167 F.2d 410, 414. Compare also 21 U.S.C.A. §§ 373 and 331(e), and the language of the Fourth Circuit in United States v. 75 Cases, More or Less, Each Containing 24 Jars of Peanut Butter, 146 F.2d 124, at pages 127 and 128. At best the point is in the last degree technical.

■ It is claimed that the government's evidence to show adulteration, in that the food had been prepared, packed and held under insanitary conditions, is insufficient to sustain the convictions. The claim is without substance, as a brief summary of the testimony will indicate. Three interstate shipments of allegedly adulterated products are involved. Samples from each were obtained and analyzed by representatives of the Food and Drug Administration, and insects or larvae fragments and other foreign matter

---

1. "§ 342. Adulterated food
    "A food shall be deemed to be adulterated—
      "(a) * * * (3) if it consists in whole or in part of any filthy, putrid, or decomposed substance, or if it is otherwise unfit for food; or (4) if it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health; * * *."

were found in each sample. The sanitary conditions prevailing in the Seattle plant during June and July of 1951—the period during which the food in question was manufactured—were described not only by the inspectors of the Food and Drug Administration but by former and present employees of the corporation. Inspectors Shallit and Allen described the inside appearance of the plant building, including the flour storage bin, the conveying system, and the manufacturing and drying equipment, and they testified to finding everywhere live or dead moths, live larvae, insect webbing, and pupae.

■ It is urged that Dedomenico can not be held responsible for the shipments inasmuch as he was admittedly absent from the plant during the period June 28 to July 25. We do not agree. It is notable that the food product involved in one of the counts was manufactured and packed before he left for San Francisco, and that samples from this pack were shown to be more seriously contaminated than the majority of the other samples taken. Also it appears that one of the three shipments was made on July 26, the day after he returned. The unsanitary conditions found in the establishment had certainly prevailed for a considerable length of time prior to his departure. The record discloses also that he and the corporation had suffered a previous conviction for like violations of the Act. It is unnecessary to rest decision in this respect on the settled rule appealed to by government counsel that the criminal responsibility of a corporate officer having broad authority such as that possessed by this defendant does not depend upon his physical presence. See in support of the rule United States v. Dotterweich, 320 U.S. 277, 281–285, 64 S.Ct. 134, 88 L.Ed. 48; United States v. Kaadt, 7 Cir., 171 F.2d 600, 604; United States v. Parfait Powder Puff Co., 7 Cir., 163 F.2d 1008, 1009–1010, certiorari denied 332 U.S. 851, 68 S.Ct. 356, 92 L.Ed. 421; State v. Burnam, 71 Wash. 199, 128 P. 218; People v. Schwartz, 28 Cal.App. 2d Supp. 775, 70 P.2d 1017.

Another contention is that § 342(a)(4), on which the convictions in part rest, is so indefinite, uncertain and obscure as to render it violative of the Fifth and Sixth Amendments. The provision has been quoted in footnote 1 above, but for convenience we repeat its language. It declares that a food shall be deemed adulterated "if it has been prepared, packed, or held under insanitary conditions whereby it may have become contaminated with filth, or whereby it may have been rendered injurious to health".

■ No decision directly in point is cited in support of the contention. The Eighth Circuit, in Berger v. United States, 200 F.2d 818, held that the section conveys a sufficiently definite warning as to what conduct would constitute a crime to save the provision from invalidity for vagueness. We are in agreement with this holding. Compare Boyce Motor Lines v. United States, 342 U.S. 337, 72 S.Ct. 329, 96 L.Ed. 367, dealing with the alleged vagueness of a regulation promulgated by the Interstate Commerce Commission under statutory authority. In rejecting the claim of vagueness, the Court there said 342 U.S. at page 340, 72 S.Ct. at page 330, that "(b)ut few words possess the precision of mathematical symbols, most statutes must deal with untold and unforeseen variations in factual situations, and the practical necessities of discharging the business of government inevitably limit the specificity with which legislators can spell out prohibitions. Consequently, no more than a reasonable degree of certainty can be demanded. Nor is it unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." See also United States v. Petrillo, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877, where the words "unneeded employees" were held sufficiently clear to escape condemnation.

Other points raised are too lacking in substance to warrant discussion.

The judgment is affirmed.