**Emil SCHOEPFLIN and William Smith, Appellants,**

v.

**UNITED STATES of America, Appellee.**

No. 19992.

United States Court of Appeals
Ninth Circuit.

Jan. 2, 1968.

**392**

B. Ray Anderson, Walnut Creek, Cal., for William Smith.

William S. Hochman, San Francisco, Cal., for Emil Schoepflin.

William B. Shubb, Asst. U. S. Atty., Cecil F. Poole, U. S. Atty., San Francisco, Cal., for appellee.

Before BARNES, HAMLEY and JERTBERG, Circuit Judges.

HAMLEY, Circuit Judge:

Emil Schoepflin and William Smith appeal from their conviction, following a joint jury trial, of robbing a federally-insured bank in violation of 18 U.S.C. § 2113(a) (1964).

On November 19, 1964, at approximately 8:25 a. m., the Fulton-Fair Oaks Branch of the Bank of America in Sacramento, California, was robbed by two

men wearing nylon stockings over their heads. Smith was arrested at his apartment in a duplex early the following morning. Part of the stolen bank money and a nylon stocking were found on the premises. Schoepflin was not apprehended until two months later when he was caught in a stolen automobile following a "hot pursuit" chase. More of the stolen money and the guns believed to have been used in the robbery were found in the trunk of the car.

Because both defendants claim distinct and unrelated errors, we will separately discuss the contentions of each.

### I. Schoepflin's Appeal

Schoepflin's first contention is that, prior to in-custody interrogation during which a confession was obtained, the agent for the Federal Bureau of Investigation who did the questioning failed to give Schoepflin the warning he was entitled to under Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977.[1] Accordingly, he argues, the trial court erred in overruling his objection to reception of the confession in evidence.

The only warning which *Escobedo* requires is that the person being questioned has an absolute constitutional right to remain silent. 378 U.S. at 490–491, 84 S.Ct. 1758; Johnson v. State of New Jersey, 384 U.S. 719, 733–734, 86 S.Ct. 1772, 16 L.Ed.2d 882. Schoepflin was given that warning.

Moreover, under *Escobedo*, this warning need not be given unless all of the following circumstances exist: (1) the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, (2) the suspect has been taken into police custody, (3) the police carry out a process of interrogation that lends itself

1. Since the trial began on February 15, 1965, which was prior to the effective date of the guidelines established in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the problem presented is controlled by the standards set forth in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, decided on June 22, 1964. See Johnson v. State of New Jersey. 384 U.S. 719, 734, 86 S.Ct. 1772, 16 L.Ed.2d, 882.

to eliciting incriminating statements, and (4) the suspect has requested and been denied an opportunity to consult with his lawyer. At the time of his interrogation Schoepflin did not request an opportunity to consult with his lawyer and was therefore not entitled to the warning referred to above, as the law stood under *Escobedo*. See Manning v. State of California, 9 Cir., 378 F.2d 357.

We conclude that the trial court did not err in receiving in evidence Schoepflin's confession.

Schoepflin argues that the trial court erred in admitting into evidence the bank money and guns found in the trunk of the car in which Schoepflin was arrested. He contends that the warrantless search of the car trunk was not incident to his arrest and was therefore illegal.

On the evening of January 19, 1965, a stolen car was observed on the highway in Redwood City, California. A "hot pursuit" by police and sheriff units commenced, and the stolen car was finally brought to a stop after it crashed into a "running road block" of police cars. Schoepflin, the sole occupant of the car, was arrested and taken to a nearby hospital for treatment of minor injuries. While he was at the hospital Schoepflin confessed to the bank robbery.

Meanwhile, a state highway patrolman arranged to have the vehicle towed off the highway to a private garage in Burlingame, California, where it was impounded by the state highway patrol. Some two hours later an agent of the Federal Bureau of Investigation, proceeding on the basis of Schoepflin's oral confession to the bank robbery, searched the car. No search warrant was obtained. In the trunk of the car the agent found part of the stolen bank money and the two guns believed to have been used in the robbery. The admission of these articles into evidence at the trial forms the basis of this argument on appeal.

On the motion to suppress, Schoepflin argued that the warrantless search was not incident to his arrest and therefore the evidence should be excluded. The trial court denied the motion on the ground that since the car was stolen and Schoepflin did not have legal possession of the car, he did not have standing to object to the search and seizure.

Had the police searched this automobile on the highway at the place where Schoepflin was arrested, without first seizing it as a stolen vehicle, Schoepflin would have had standing to object to that search. Cotton v. United States, 9 Cir., 371 F.2d 385. But no search was made at that time. There was then only a seizure of the car as a stolen vehicle, incident to Schoepflin's immediately preceding arrest. Schoepflin had standing to object to that seizure as not incident to a lawful arrest. However, he made no such objection and, in any event, the arrest was lawful.

The only search that occurred, and the one that Schoepflin objects to, was made at the private garage where the vehicle had been impounded by the state highway patrol. We need not decide whether Schoepflin has standing to challenge that search because, in our opinion, the search was not violative of Schoepflin's Fourth Amendment rights.[2]

In so holding we have in mind that it was a warrantless search. We also agree with Schoepflin that, in view of the time lag and change of location of the automobile following the arrest, the search was not incident to Schoepflin's arrest on the highway. See Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777.

Since the automobile had been reported as stolen, the police were authorized to seize and impound the vehicle

---

**2.** In his brief Schoepflin argues that the trial court's denial of his motion to suppress on the basis of his lack of standing prevented him from testing the reasonableness of the search. However, the record reveals that the trial court denied the motion only after all the evidence on the reasonableness of the search was introduced.

for the rightful owner. See Calif. Vehicle Code §§ 22651, 22850 and 22852 (1960).[3] In performing this duty, the police were acting as agent for the owner rather than as agent for the arrested person, as in *Preston*. At the time the search was made, Schoepflin had no interest therein, possessory or otherwise.[4]

Coupled with this circumstance is the further fact that the search was related to the reason Schoepflin was arrested. It is common knowledge that stolen automobiles are often used in committing bank robberies. Moreover, at the time of the search Schoepflin had confessed to bank robbery and was then, in effect, under arrest for the additional crime of bank robbery. In *Preston*, on the other hand, the driver had been arrested for vagrancy, not car theft or any other crime, and the subsequent search had no relation to the charge of vagrancy. It was but a fishing expedition to determine whether the automobile contained evidence of any other crime.

Our case is thus not only distinguishable from *Preston*, in which the search and seizure were held to be unlawful, but is closely analogous to Cooper v. State of California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730, in which the legality of the search and seizure was upheld.

In *Cooper*, police arrested the defendant for sale of narcotics. They then seized and impounded the automobile which had been used to carry on this activity. This was done pursuant to a state statute which required that a vehicle which had been used in committing an offense against the state narcotic laws be seized and "held as evidence until a forfeiture has been declared or a release ordered." Calif. Health & Safety Code § 11611 (1955). A week after the seizure police made a warrantless search of the impounded vehicle and found additional evidence of a violation of the state narcotic laws. The Supreme Court held that, under these circumstances, the case was distinguishable from *Preston*, and the search was reasonable under the Fourth Amendment.

It is true that in *Cooper* the search was somewhat more directly related to the reason the defendant was arrested than in our case. On the other hand, in *Cooper* the arrested person had, at the time of the search, an ownership interest in the vehicle subject only to possible forfeiture, whereas in our case Schoepflin had never had any ownership interest in the car and his possessory interest had been terminated by the valid seizure.

Under all of the indicated circumstances and "the total atmosphere of the case," United States v. Rabinowitz, 339 U.S. 56, 66, 70 S.Ct. 430, 435, 94 L.Ed. 653, we hold that the search here in question was reasonable within the meaning of the Fourth Amendment. The trial court did not err in admitting the evidence seized in the trunk of the stolen car.

■ Finally, Schoepflin objects to the trial court's failure to grant a mistrial after an agent of the Federal Bureau of Investigation, in responding to a question on direct examination as to what "else" Schoepflin had told him, testified, "(h)e told me that he met Willie Smith in San Quentin. * * *" At the time the remark was made, counsel for Schoepflin objected and moved for a mistrial. The trial court denied the motion but instructed the jury to disregard the witness' remark. It does not appear that the statement was elicited by the Government in bad faith.

Counsel for Schoepflin argued in the trial court that the effect of this remark by the F.B.I. agent was to preclude counsel from arguing to the jury that there

---

**3.** Section 22651 authorizes law enforcement officials to remove stolen vehicles from the highway. Section 22850 provides for the impounding of vehicles so removed from the highway. Section 22852 provides that notice of such impounding shall be given to the owner of the vehicle.

**4.** The owner was entitled to repossess his automobile as soon as it was impounded by the police. See Calif. Vehicle Code § 22853 (1960).

was no evidence in the case linking Schoepflin to his co-defendant Smith.

However, this inadvertent remark, followed by an instruction for the jury to disregard the remark, could not have been any more prejudicial to Schoepflin's case than the Government's impeaching evidence, referred to below in discussing Smith's appeal, to the effect that Schoepflin and Smith had at one time occupied cells in San Quentin in close proximity to each other. In this latter instance, at the request of Schoepflin's counsel, the jury was also instructed to disregard the testimony as against Schoepflin. Moreover, other evidence introduced by the Government, including Schoepflin's confession, already precluded counsel from arguing that there was no evidence linking the two defendants.

■ In determining what effect an uncalled-for statement of a witness had, or should reasonably be taken to have had, upon the jury's verdict, the statement must not be considered in isolation but must be considered against the entire setting of the case. Neal v. United States, 9 Cir., 342 F.2d 730, 736. Considering the questioned remark of the F.B.I. agent in the context of the entire record, and particularly in view of the other evidence referred to above, we conclude that, in all probability, the remark had little, if any, effect upon the jury's verdict. We therefore hold that the trial court did not abuse its discretion in denying the motion to declare a mistrial.

## II.  Smith's Appeal

One of Smith's arguments on appeal relates to the admission in evidence of a written confession given by his co-defendant Schoepflin. Shortly after Schoepflin was arrested, he signed a written confession. The confession named Smith as a participant in the robbery. At the trial it was read to the jury. Before it was read, however, the trial court instructed the jury that they were not to consider the statement as against Smith. At the close of all the evidence the jury was again admonished to consid-

er the evidence only as against the defendant with respect to whom it was received.

Smith contends that the trial court erred in failing to delete any reference to himself in Schoepflin's confession, or, in the alternative, failing to grant his motion for a separate trial.

■ At the trial Smith did not request the court to delete his name from the confession. Thus, the trial court's failure to do so cannot now be asserted as error. Cf. Stevens v. United States, 9 Cir., 256 F.2d 619, 623.

■ The question still remains, however, whether the trial court abused its discretion in failing to grant Smith's motion for severance prior to the trial in light of the fact that the court was advised that the Government planned to introduce Schoepflin's confession implicating Smith. Rule 14, Federal Rules of Criminal Procedure, permits the court, in its discretion, to order severance of co-defendants where it appears that they may be prejudiced by joinder. Whether Smith was in fact prejudiced by introduction of the hearsay statement depends on the clarity and efficacy of the trial court's cautionary instructions to inform the jury of the statement's limited nature. Delli Paoli v. United States, 352 U.S. 232, 239, 77 S.Ct. 294, 1 L.Ed.2d 278.

Smith does not question the sufficiency of the limiting instructions. Rather, he questions whether the jury could reasonably be expected to follow these instructions. We have reviewed the record and find no indication that the jury may have been confused, or that it could not reasonably appraise the evidence against each defendant solely on the basis of that defendant's own acts, statements and conduct. See United States v. Stromberg, 2 Cir., 268 F.2d 256, 264–266.

This case cannot be compared with a joint conspiracy trial of several defendants, each charged with various offenses. See, e. g., United States v. Bozza, 2 Cir., 365 F.2d 206, 216. The indictment here

charged each defendant with only one count of bank robbery. Further, the alleged role of each defendant in the crime was easily understood and the separate interests of each were emphasized throughout. See Delli Paoli v. United States, supra, 352 U.S. at 241, 77 S.Ct. 294. Moreover, Smith's failure to request deletion of any reference to himself in the confession suggests that, in the context of the entire trial, Smith did not regard the incident as involving substantial prejudice. See Williamson v. United States, 9 Cir., 310 F.2d 192, 197.

We conclude that the trial court did not err in denying the motion for severance.

■ At the trial Smith testified in his own behalf. He denied ever having seen co-defendant Schoepflin. To impeach this denial the Government presented testimony to the effect that some ten years before the alleged robbery Smith and Schoepflin occupied cells in close proximity to each other in San Quentin penitentiary. Smith contends that the probative value of this testimony to impeach Smith's testimony was outweighed by its prejudicial effect in showing Smith's past criminal conduct, and should therefore have been excluded.

The record indicates, however, that Smith had already testified on direct examination that he had previously been convicted of three burglaries and one grand theft. It follows that the impeaching testimony in question was not prejudicial in the respect urged. The trial court therefore did not err in receiving this testimony.

■ Smith argues that the trial court erred in taking judicial notice that the Fulton-Fair Oaks Branch of the Bank of America was a national bank, insured by the Federal Deposit Insurance Corporation (F.D.I.C.).

In order to prove an offense under 18 U.S.C. § 2113(a), it was necessary for the Government to establish, as alleged in the indictment, that the Fulton-Fair Oaks Branch of the Bank of America was a national bank, or a bank where deposits were insured by the Federal Deposit Insurance Corporation.[5]

Concerning the latter, the Government introduced in evidence, without objection, an F.D.I.C. certificate for the Fulton-Fair Oaks Branch, showing that, on March 15, 1961, that branch was insured by F.D.I.C. An assistant vice president and administrative officer of the Bank of America later testified that this certificate must have been in force on November 19, 1964, when the branch was robbed, or otherwise that branch could not have been in operation.

It was during the further cross-examination of this witness that the trial court announced that it took judicial notice of the fact that the Bank of America is a member of the Federal Reserve System and is insured by the F.D.I.C.

The exhibit and testimony produced by the Government, referred to above, constituted substantial evidence that the Fulton-Fair Oaks Branch was a bank

5. The indictment charged the defendants with a violation of 18 U.S.C. § 2113(a). That statute pertains to the robbery of "any bank, or any savings and loan association * * *." In 18 U.S.C. § 2113(f), the term "bank" is defined to mean: (1) any member bank of the Federal Reserve System, (2) any bank, banking association, trust company, savings bank, or other banking institution organized or operating under the laws of the United States, or (3) any bank the deposits of which are insured by the Federal Deposit Insurance Corporation. In the indictment all three aspects of this definition were relied upon. It was alleged that the Fulton-Fair Oaks Branch was "a National Bank." This gives application to the first two aspects of the definition of "bank," since the term "national bank" means and includes any national bank, state bank, or bank and trust company which has become a member of one of the Federal Reserve banks. See 18 U.S.C. § 656 (1964). The third aspect of the definition was relied upon in view of the allegation in the indictment that the branch bank in question " * * * was a bank whose deposits were insured by the Federal Deposit Insurance Corporation."

whose deposits were insured by F.D.I.C. This evidence was undisputed.

Nevertheless, if the trial court's statement that it took judicial notice of that fact amounts to a direction to the jury that they shall so find, a serious question would be presented as to whether the statement constituted error. The authorities dealing with the right of the trial judge to take from the jury in a federal criminal trial an issue of fact which is undisputed in favor of the Government's version, are discussed in the concurring opinion of Judge Duniway, and the dissenting opinion of Judge Hamley in Brown v. United States, 9 Cir., 334 F.2d 488, at 497 and 501.[6]

However, in view of the instructions given to the jury at the end of the trial, we are of the view that, insofar as the jury was concerned, the trial court's statement concerning judicial notice constituted no more than a permissible comment on the evidence.

■■■ In those instructions the court defined the term "bank," thereby indicating that the issue had not been withdrawn from the jury. The trial court also gave the usual instruction that the jurors are the exclusive judge of the facts, no exceptions being stated. The court also instructed that the jury "must not be influenced. * * *" by any opinion expressed by the court on any question of fact,[7] and that the jurors must determine for themselves all questions of fact without regard to any opinion they may suppose the court may have or entertains. That counsel for Smith also regarded the court's judicial notice statement as in the nature of a comment on the evidence, rather than the taking of an issue of fact from the jury, is indicated by the fact that no objection was then taken to the trial court's statement.

Finally, Smith raises a search and seizure question. He asserts that the trial court erred in admitting in evidence, over his objection, articles seized in his apartment as the result of a police search.[8]

The search was made without a search warrant or a warrant of arrest, and incriminating evidence was found before the officers arrested Smith or had probable cause to arrest him. The precise issue which was presented to the trial court was whether, under circumstances in which the search and seizure would otherwise have been unreasonable in the Fourth Amendment sense, it was rendered reasonable because of a prior consent thereto by Smith.

The evidence, considered in a light most favorable to the Government, reveals the following: Shortly after the robbery police received reports that Smith, an unemployed fry cook on parole from previous robbery convictions, had used a considerable amount of cash in purchasing a car. He was also suspected of having stolen a gun from his former roommate a few days before the robbery. Suspecting, therefore, that Smith may have been involved in the recent bank robbery, six police officers went to his apartment at 1 a. m. on the day following the robbery to question him about his recent activities. The officers had neither an arrest nor search warrant and the Government did not contend that the police had probable cause to arrest Smith at that time.

Three of the officers went to the front door and three went to the back or side door. Smith was then in bed reading a

---

6. The majority in this en banc decision disposed of the appeal on another ground. The United States Supreme Court affirmed on still another ground. United States v. Brown, 381 U.S. 437, 85 S.Ct. 1707, 14 L.Ed.2d 484.

7. This was farther than the trial court was required to go. The jury is entitled to be influenced by the trial court's fair comment concerning the evidence if the jury so chooses.

8. This evidence consisted of thirteen bundles of currency, aggregating $6100, found in a china cabinet, $280 in currency found in a linen closet, $46 in a leather container found in a night stand, a pair of gloves found in a trash collection, and two nylon stockings, also found in the trash.

paper. An officer rang the front door bell. Smith appeared at the door in his bathrobe. The officer in charge identified himself and asked if they could come in and talk to him. Smith replied: "Yes, come ahead." The three officers who had gone to the front door then entered the apartment.

Once inside, the officer in charge explained that they were investigating a bank robbery and stolen gun. Smith denied involvement in either crime. When asked about his recent car purchase, Smith explained that he had purchased the car with borrowed money. After four or five minutes of questioning, the officer in charge asked "if we may search the apartment or the house. * * *" Smith replied, "Go ahead, I have nothing to hide."[9]

At this point the officer in charge went to the back or side door and asked the other three officers to come in. Smith had not been requested to permit their entry and had not given such permission. The search began and within a few minutes money was found in a hallway closet and a nylon stocking was found in a trash can. Smith was then placed under arrest. The search then continued and the other articles described in note 8, above, were found and seized.

On the basis of the above testimony, the motion to suppress the articles found in Smith's apartment was denied by the court without findings or comment.

■ Under the stated circumstances, the trial court order of denial necessarily represents a trial court holding that Smith had waived his constitutional immunity from unreasonable search and seizure. Waiver, in this context, means the "intentional relinquish-

ment or abandonment of a known right or privilege." Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461. In applying this principle in the area of searches and seizures this court has prescribed the following test to be used in determining whether there has been a waiver of the constitutional right:

"Such a waiver cannot be conclusively presumed from a verbal expression of assent. The court must determine from all the circumstances whether the verbal assent reflected an understanding, uncoerced, and unequivocal election to grant the officers a license which the person knows may be freely and effectively withheld." Cipres v. United States, 9 Cir., 343 F.2d 95, 97.[10]

In view of this test, the trial court determination that there had been an effective waiver cannot stand unless there is implicit therein a finding of fact that, under the described circumstances, the words used by Smith reflected (1) an understanding, (2) uncoerced, and (3) unequivocal election to grant the officers a license which (4) Smith knew may be freely and effectively withheld.

■ If such a finding is not implicit in the trial court's denial of the motion to suppress the court erred in receiving the evidence. If such a finding is implicit in the trial court's action denying the motion to suppress, the question remains whether such a finding is supported by the evidence reviewed above. In deciding this question the "clearly erroneous" rule of Rule 52(a), Federal Rules of Civil Procedure, is to be applied. See United States v. Page, 9 Cir., 302 F.2d 81, 85.

9. This was the testimony of Harold V. Guerin, the officer in charge. He stated that this was his recollection of the exact words. The other two officers present at that conversation give a somewhat different version. Inspector Edward L. Bristo testified that he did not recall Guerin's exact words, but it was "something about 'Do you mind if we look around?'" Lt. Graham C. Butcher testified that Lt. Guerin asked Smith "if we could look around (or through) the house. * * *" Lt. Butcher further testified that, to the best of his knowledge, Lt. Guerin did not use the word "search."

10. See, also, Oliver v. Bowens, 9 Cir., 383 F.2d 688, decided on November 28, 1967.

██ If we were required to decide this question on the present record, it would be necessary for us to conclude that the implicit finding referred to above is clearly erroneous in at least one critical aspect. We refer to the fourth essential element of an effective waiver of this constitutional right, as listed above. There is not a word of testimony in the record to indicate that Smith was aware of the fact that he could refuse to permit the requested search of his apartment.

Unlike the *Page* case, supra, where the officer who desired to make the search told the defendant that he was not required to consent, no such advice was given to Smith. Nor did Smith himself say or do anything to indicate that he knew he had the right to withhold consent.[11] While Smith had been convicted of prior robberies, there is no showing that they involved search and seizure questions which would have served to educate Smith as to his constitutional right to withhold consent.

It may be, however, that counsel and the trial court may have overlooked the importance of this line of inquiry. While the general principle that waiver of a constitutional right means the "intentional relinquishment or abandonment of a *known* right or privilege," has been established at least since Johnson v. Zerbst, supra, decided in 1938, its application in the area of searches and seizures was not specifically called to the attention of the bench and bar until our decision in Cipres v. United States, supra. *Cipres* was decided on March 18, 1965, which was a month and three days after the commencement of the trial in the case before us. Under these circumstances we think it appropriate to follow the appellate procedure utilized in *Cipres,* where the cause was remanded for the limited purpose of exploring and determining the issue of waiver in the light of the principles there announced.

In addition to making a specific finding on the issue of whether Smith knew he could freely and effectively withhold his consent, the trial court, on the remand, should also make an express finding as to whether Smith's consent to the search was coerced or uncoerced. At present, the record contains only an implied finding that the consent was uncoerced. The question of coercion has been raised on this appeal but is reserved for consideration after the cause is returned to this court following the remand.

Affirmed on Schoepflin's appeal. Remanded on Smith's appeal for the limited purpose of permitting the trial court to explore and determine the waiver issues discussed above.

If the trial court finds and concludes as a result of such further proceedings that Smith did not waive his constitutional search and seizure rights it shall set aside the conviction and grant Smith a new trial. If the trial court finds and concludes that Smith freely and knowingly waived these rights, the cause shall be retransferred to this court for further consideration of the pending appeal on the present record and briefs, as supplemented by a record of the further proceedings and simultaneous supplemental briefs to be served and filed within twenty days after retransfer of the cause.

---

11. Smith testified that he said: "I can't stop you, go ahead," thereby indicating lack of knowledge. The trial court, however, was not obliged to believe that he used these words.