409 F.2d 1303
 Carl W. SPAHR and William A. Kaiser, Appellants,
v.
UNITED STATES of America, Appellee.
 No. 21324.
 United States Court of Appeals Ninth Circuit.
 March 28, 1969.
 Rehearing Denied June 20, 1969.
 
 1
 Bruce I. Hochman (argued), of Hochman & Salkin, Los Angeles, Cal., for appellants.
 
 
 2
 Jo Ann Dunne (argued), Asst. U. S. Atty., Wm. Matthew Byrne, Jr., U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Eric A. Nobles, Asst. U. S. Atty., Los Angeles, Cal., for appellee.
 
 
 3
 Before KOELSCH and BROWNING, Circuit Judges, and POWELL, District Judge.
 
 POWELL, District Judge:
 
 4
 Appellants challenge their conviction on four counts of attempting to evade corporate income taxes for the years 1959-1962, inclusive. Appellants were officers of a California corporation known as Pioneer Diecasters, Inc. They were responsible for the preparation of the corporate income tax returns. There is no challenge to the sufficiency of the evidence. It shows four distinct schemes to evade taxes. Error is claimed in the denial by the trial court of appellants' motion to suppress evidence obtained in violation of their Fourth, Fifth and Sixth Amendment rights.
 
 The facts pertinent here are as follows:
 
 5
 Internal Revenue investigation of Pioneer Diecasters was commenced because of an "information item," an informer's tip. A year and a half of intermittent investigation by special agents of the Intelligence Division preceded the events which were the basis of the motion to suppress.
 
 
 6
 In April 1964 a special agent named Byerly had charge of the investigation of the Pioneer Diecasters. By that time it was a "numbered case," one which had proceeded from preliminaries to full-scale examination. Through his group Chief Agent Byerly could initiate a recommendation for criminal prosecution.
 
 
 7
 On April 14, 1964 Special Agent Byerly and Revenue Agent Horn of the "fraud group" of the Audit Division met by appointment with appellant Spahr at the Pioneer Diecasters' offices. The agents had cause to believe that fictitious transactions had been entered in the corporate records. They had not seen them. Without reconciling them with the corporate tax returns they could not determine whether taxable income had been understated. On April 14 and 16, 1964 Agents Byerly and Horn were permitted to examine and copy the corporate records. The evidence thus obtained, which constituted a substantial part of the Government's case against defendants, was the subject of appellants' motion to suppress.
 
 
 8
 Byerly and Horn introduced themselves as Internal Revenue Agents. No warnings were given before the agents copied the company records. The appellants complain that this violated their Fourth, Fifth and Sixth Amendment rights. The corporate records were received in evidence. There was no testimony tending to show that any oral statements or admissions were made by either of the appellants tending to incriminate them.
 
 I. Right to Counsel
 
 9
 Appellants complain that Agents Byerly and Horn did not inform Spahr of his right to counsel before commencing their examination of the corporate records. They argue that this failure to warn constitutes denial of counsel and that it taints the proceedings to the extent that the examination was an unreasonable search and that the appellants were compelled to incriminate themselves.
 
 
 10
 Spahr asked Agent Horn whether his "representative" should be present. Agent Horn replied that "it was up to [Spahr]," and Spahr responded, "Well, he doesn't know much about taxes anyway." "Representative" in this context appears to refer to Spahr's lawyer who appeared later in the investigation.
 
 
 11
 In Escobedo v. State of Illinois, 378 U.S. 478, 490, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964), relied on by appellants, the court discusses the stages of criminal investigation and the "focus on a particular accused." The court later set forth a specific procedure to be followed when "custodial interrogation" was contemplated. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The "custodial interrogation" limitation provides a point of reference for law enforcement, a means of determining when a suspect should be warned of his right to counsel.[1]
 
 
 12
 In Kohatsu v. United States, 351 F.2d 898, 901 (9th Cir. 1965), cert. den., 384 U.S. 1011, 86 S.Ct. 1915, 16 L.Ed.2d 1017 (1966), a tax case, this Court said:
 
 
 13
 "In taking the phrase `focus on a particular suspect' out of context, appellant would extend the rule of Escobedo beyond any logical implication of the effect of that decision. The Supreme Court in Escobedo referred to an unsolved crime. The existence of the crime was apparent. The police were seeking to identify the offender. The accused had been taken into custody. In the instant case the essential question to be determined by the investigations of the revenue agents was whether in fact any crime had been committed. The accused had not been indicted or arrested."
 
 
 14
 The holding in Kohatsu was reaffirmed in Selinger v. Bigler, 377 F.2d 542 (9th Cir.), cert. den., 389 U.S. 904, 88 S.Ct. 212, 19 L.Ed.2d 218, reh'r den., 389 U.S. 998, 88 S.Ct. 462, 19 L.Ed.2d 503 (1967). The Kohatsu decision and the custodial interrogation rule have been relied upon by other circuits to reach the same result. Morgan v. United States, 377 F.2d 507 (1st Cir. 1967); United States v. Maius, 378 F.2d 716 (6th Cir.), cert. den., 389 U.S. 905, 88 S.Ct. 216, 19 L.Ed.2d 219 (1967); United States v. Mancuso, 378 F.2d 612 (4th Cir.), modified, 387 F.2d 376 (1967).
 
 
 15
 The Supreme Court decided Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381, on May 6, 1968. In the Mathis case the court reversed the 5th Circuit decision found in 376 F.2d 595 and held that the rule enunciated in Miranda v. Arizona, supra, applies to tax fraud investigations by revenue agents. At the time Mathis was interrogated he was incarcerated in the Florida State Penitentiary on an unrelated charge. The court explicitly limited its holding to "custodial interrogation" situations and quoted from Miranda as follows:
 
 
 16
 "`To summarize, we hold that when an individual is taken into custody, or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. 384 U.S. at 478, 86 S.Ct. at 1630.'" (391 U.S. 1, at p. 5, 88 S. Ct. at p. 1505).
 
 
 17
 This Court has recently expressed its reluctance to extend the Miranda rule beyond its stated limits. F. J. Buckner Co., dba United Engineering v. N. L. R. B., 401 F.2d 910, 914 (9th Cir. 10/1/68), cert. den., 393 U.S. 1084, 89 S.Ct. 868, 21 L.Ed.2d 777 (Feb. 24, 1969), Spahr was not in custody or deprived of his freedom in any way when he consented to the examination and copying of the corporate records. The agents were not required to advise him of the right to counsel. No deprivation of Fourth, Fifth or Sixth Amendment rights should be predicated upon failure to give a warning that was not required.
 
 II. Warnings of Fourth Amendment Rights
 
 18
 The Supreme Court in Mancusi v. De Forte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968), held that a union official sharing a large office with others had standing to object to an illegal search and seizure of corporate records. Unlike Mancusi, the appellants here contend that a warning should have been given advising them that the corporation was privileged to deny access to its records unless under authority of a search warrant. Because it was not, they contend the evidence challenged by their motion to suppress was the result of an unlawful search. See: Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). We recognize that a corporation is afforded the Fourth Amendment's protection against unreasonable searches and seizures. Mancusi v. De Forte, 392 U.S. 364, 367, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968); Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920); Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652 (1906).
 
 
 19
 The issue which the appellants now seek to raise was not presented to the trial court. Although the motion to suppress relied upon the Fourth Amendment, it did so solely on the grounds that the Fourth Amendment was violated because the search was conducted without warning the appellants of Fifth and Sixth Amendments rights, and under misrepresentation as to the purposes of the search (a contention considered below).
 
 
 20
 Appellants did not contend before the district court that they had a Fourth Amendment right to insist upon a search warrant, and that their verbal assent to the warrantless seach was rendered ineffective by their lack of knowledge of this right. Neither this Fourth Amendment claim nor the issue of waiver was litigated in the district court; both appear for the first time in appellants' opening brief on appeal.
 
 
 21
 In these circumstances we need not, and do not, reach these issues, particularly since the failure to raise them below resulted in an inadequate evidentiary record on the waiver issue. Standley v. United States, 318 F.2d 700, 701 (9th Cir. 1963).
 
 III. Purpose of Investigation
 
 22
 Appellants contend that Agents Byerly and Horn concealed the true purpose of their investigation, which was to collect evidence for a criminal prosecution. If the agents procured their invitation through guile or fraud, the subsequent examination of Pioneer's records would constitute an unreasonable search. Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647 (1921); See also, Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); Lewis v. United States, 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966). We find no deception. Agent Byerly identified himself as a special agent from the Intelligence Division of the Internal Revenue Service. Agent Horn identified himself as a revenue agent from the Audit Division. Kohatsu v. United States, supra; United States v. Sclafini, 265 F. 2d 408 (2d Cir.), cert. den., 360 U.S. 918, 79 S.Ct. 1436, 3 L.Ed.2d 1534 (1959). In the Sclafini case the Court said:
 
 
 23
 "A `routine' tax investigation openly commenced as such is devoid of stealth or deceit because the ordinary taxpayer surely knows that there is inherent in it a warning that the government's agents will pursue evidence of misreporting without regard to the shadowy line between avoidance and evasion, mistake and willful omission." 265 F.2d at 414, 415.
 
 IV. Self-Incrimination
 
 24
 Appellants next complain of the agents' failure to advise Spahr of his privilege against self-incrimination. But appellants made no statements and none were testified to, unless the testimony concerning their consent to the examination of the records could be so classified. The corporation has no privilege against self-incrimination. United States v. White, 322 U.S. 694, 64 S.Ct. 1248, 88 L.Ed. 1542 (1944); Note, The Constitutional Rights of Associations to Assert the Privilege Against Self-Incrimination, 112 U.Pa.L.Rev. 394 (1964). Appellants could be required to produce the corporate records, although the records might incriminate them personally. Wild v. Brewer, 329 F.2d 924 (9th Cir.), cert. den., 379 U.S. 914, 85 S.Ct. 262, 13 L.Ed. 2d 185 (1964).
 
 V. Due Process
 
 25
 Appellants next contend that the cumulative effect of these several failures to warn denied them due process. The failure of the agents to give the Miranda-type warnings has been considered separately. We have refused to consider the Fourth Amendment claim that the appellants should have been advised of their rights against unreasonable searches and seizures because it was not raised at trial. The total effect is not a deprivation of due process.
 
 
 26
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Johnson v. New Jersey, 384 U.S. 719, 734, 86 S.Ct. 1772, 16 L.Ed.2d 882 (June 20, 1966) refuses to makeMiranda retroactive. The Miranda guidelines are available "only to persons whose trials had not begun as of June 13, 1966." The trial of the instant case started Monday, June 13, 1966. If Rule 45(a) F.R.Cr.P. is applied and the first day is excluded there may be doubt if the Miranda rules should be applied to this case.