UNITED STATES of America,
Plaintiff-Appellee,

v.

THRIFTIMART, INC., a corporation, dba Smart & Final Iris Co., Gil P. Stewart, Wm. Todd, Sr., and Robert D. Jensen, individuals, Defendants-Appellants.

No. 23485.

United States Court of Appeals, Ninth Circuit.

July 7, 1970.

Rehearing Denied Aug. 3, 1970.

William J. Currer, Jr. (argued), Los Angeles, Cal., for defendants-appellants.

Howard B. Frank (argued), Asst. U. S. Atty., Wm. Matthew Byrne, Jr., U. S. Atty., Robt. L. Brosio, Chief, Criminal Division, Los Angeles, Cal., Arthur A. Dickerman, Dept. of Health, Education and Welfare, Los Angeles, Cal., for plaintiff-appellee.

Before MERRILL and TRASK, Circuit Judges, and PENCE, District Judge.*

MERRILL, Circuit Judge:

Appellants have been convicted of violations of the Federal Food, Drug &

* Honorable Martin Pence, United States District Judge for the District of Hawaii, sitting by designation.

Cosmetic Act, 21 U.S.C. § 331(k) and § 333(a).[1] Upon inspection, food in four company warehouses had been found to be infested with insects. Appellant Stewart was supervisor of all company cash and carry wholesale warehouses. Appellants Todd and Jensen were managers of two of the warehouses. Fines were imposed on all appellants.

The principal issue on appeal relates to the constitutionality of searches of appellants' warehouses conducted by Food & Drug Administration (FDA) inspectors. The inspections were routine and similar ones had been conducted periodically in the past. The inspectors testified that on arrival at the warehouses they approached the managers, filled out and presented their notices of inspection, requested permission to inspect and in each case were told, "Gc ahead" or words of similar import. The inspection notices contained a recitation of 21 U.S.C. § 374(a), which authorizes FDA inspectors to enter at reasonable times to inspect food warehouses. The inspectors did not have search warrants nor did they advise the warehouse managers that they had a right to insist upon a search warrant.

Appellants contend that this warrantless inspection was unconstitutional under Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), and See v. Seattle, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). The precise issue raised is whether the informal and casual consent to search given by the warehouse managers made it unnecessary to secure a search warrant. Appellants argue that a waiver of search warrant "cannot be conclusively presumed from a verbal expression of assent. The court must determine from all the circumstances whether the verbal assent reflected an understanding, uncoerced, and unequivocal election to grant officers a license which the person knows may be freely and effectively withheld." Cipres v. United States, 343 F.2d 95, 97 (9th Cir. 1965), cert. denied, 385 U.S. 826, 87 S.Ct. 58, 17 L.Ed.2d 62 (1966); Schoepflin v. United States, 391 F.2d 390 (9th Cir.), cert. denied, 393 U.S. 865, 89 S.Ct. 146, 21 L.Ed.2d 133 (1968). Since the managers were not warned that they had a right to refuse entry and since there was no proof that they knew they had such a right, appellants argue that the consent was not effective to remove the need for a search warrant.

The definition of consent to a search as set forth in *Cipres* and *Schoepflin* was the product of judicial experience in cases involving searches for evidence of a crime. The Supreme Court has long recognized that such criminal searches are not the legal equivalent of administrative inspections, and it was not until *See* and *Camara* in 1967 that the Court even applied the Fourth Amendment to the administrative search.[2] And in *See* and *Camara,* the Court clearly recognized that administrative searches must be viewed differently than criminal searches, and that their constitutionality must be tested by different standards.

■ First, the probable cause showing before a magistrate is entirely different. There need be no probable cause to suppose a violation to support a warrant to inspect. All that is required is a showing that reasonable adminis-

---

1. "§ 331. *Prohibited acts.*
The following acts and the causing thereof are prohibited:

   \*    \*    \*    \*    \*

(k) The alteration, mutilation, destruction, obliteration, or removal of the whole or any part of the labeling of, or the doing of any other act with respect to, a food, drug, device, or cosmetic, if such act is done while such article is held for sale (whether or not the first sale) after shipment in interstate commerce and results in such article being adulterated or misbranded."
Section 333(a) provides penalty.

2. *See* and *Camara* do not deal with the exclusionary rule in this context; they only held that one cannot be charged with crime for insisting upon a warrant as a condition to access to his premises.

trative standards for inspection have been established and are met in the inspection in question. 387 U.S. at 538, 87 S.Ct. 1727. Further, as stated in *Camara,* the administrative search is "neither personal in nature nor aimed at the discovery of evidence of crime" and thus involves "a relatively limited invasion of the urban citizen's privacy." 387 U.S. at 537, 87 S.Ct. at 1735. The Court quotes Frank v. Maryland, 359 U.S. 360, 79 S.Ct. 804, 3 L.Ed.2d 877 (1959) (although over-ruled), with every evidence of approval as stating that due to the public importance of the inspection process it should not be "hobbled by the blanket requirement of the safeguards necessary for a search of evidence of criminal acts." 387 U.S. at 537, 87 S.Ct. at 1735.

Moreover, while in the case of the search for evidence of crime the Supreme Court has repeatedly urged the desirability of securing a search warrant where time permits, here "most citizens allow inspection of their property without a warrant" and "it seems likely that warrants should normally be sought only after entry is refused * * *" 387 U.S. at 539, 87 S.Ct. at 1736. *See* suggests that it would be unreasonable to do otherwise save in a case where the element of surprise is crucial to the success of the operation. 387 U.S. at 545 n. 6, 87 S.Ct. 1737. That subjecting inspection to the warrant procedure is not intended to upset past practices is emphasized. In *Camara* it is stated that the Court's holding "does not suggest any change in what seems to be the prevailing local policy, in most situations, of authorizing entry, but not entry by force, to inspect." 387 U.S. at 540, 87 S.Ct. 1736. In *See* the Court characterized the warrant process as "minimal limitations on administrative action." 387 U.S. at 545, 87 S.Ct. at 1740.

It is clear, therefore, that the administrative search is to be treated differently than the criminal search. The issue in this case is whether the body of law that has grown up around the definition of consent to a search in the criminal area should mechanically be applied to the inspection of a warehouse.

In a criminal search the inherent coercion of the badge and the presence of armed police make it likely that the consent to a criminal search is not voluntary. Further, there is likelihood that confrontation comes as a surprise for which the citizen is unprepared and the subject of a criminal search will probably be uninformed as to his rights and the consequences of denial of entry.[3] Finally, the consent given to a fruitful search in a criminal case is inherently suspect. A criminal with something to hide is not likely to turn it over to the police on request unless he believes that he has no choice. Nor, in the common experience of man, is one embroiled with the law likely to relieve the state of its heavy burden before the magistrate if he knows he need not do so.

These circumstances are not present in the administrative inspection.[4] The citizen is not likely to be uninformed or surprised. Food inspections occur with regularity. As here, the judgment as to consent to access is often a matter of company policy rather than of local managerial decision. FDA inspectors are unarmed and make their inspections during business hours. Also, the consent to an inspection is not only not suspect but is to be expected. The inspection itself is inevitable. Nothing is to be gained by demanding a warrant except that the inspectors have been put to trouble—an unlikely aim for the businessman anxious for administrative good will.

---

3. In *Schoepflin,* for instance, the search was made at 1 a. m. by six police officers who had come to Schoepflin's apartment; Schoepflin's consent to the search had obviously been given in a coercive atmosphere.

4. The factual differences between the business inspection and the criminal search are sufficient to answer appellants' contention that fairness requires the rigid application of the same rules to "white collar" and "blue collar" crime.

■ We hold that the absence of coercive circumstances and the credibility of a consent given to an inspection justify a departure from the *Schoepflin* rule in cases of administrative inspection. Here, the managers were asked for permission to inspect; the request implied an option to refuse and presented an opportunity to object to the inspection in an atmosphere uncharged with coercive elements.[5] The fact that the inspectors did not warn the managers of their right to insist upon a warrant and the possibility that the managers were not aware of the precise nature of their rights under the Fourth Amendment did not render their consent unknowing or involuntary. They, as representatives of Thriftimart, Inc., were presented with a clear opportunity to object to the inspection and were asked if they had any objection. Their manifestation of assent, no matter how casual, can reasonably be accepted as waiver of warrant.[6]

■ In conclusion, we hold that in the context of the exclusionary rule a warrantless inspectorial search of business premises is reasonable when entry is gained not by force or misrepresentation, but is, with knowledge of its purpose, afforded by manifestation of assent. Lack of warrant under these circumstances did not render the inspections unreasonable under the Fourth Amendment. United States v. Hammond Milling Co., 413 F.2d 608 (5th Cir. 1969), cert. denied, 396 U.S. 1002, 90 S.Ct. 552, 24 L.Ed.2d 494 (1970).[7]

■ We have examined appellants' remaining contentions and find them without merit. Advance notice of inspection under 21 U.S.C. § 374(a) is not necessary, as its language and legislative history indicate. 2 U.S.Code

5. Appellants contend that the notices of inspection vitiated their consent since the notices indicated that there was no right to refuse entry. The notices recited 21 U.S.C. § 374(a) and 15 U.S.C. § 1271 which provide that FDA inspectors are authorized to enter and inspect warehouses. In the unlikely event that the managers read these quoted statutes given in small print on the notice, they would not have been coerced by the statutory language. The quoted statutes merely establish the authority of the FDA to make inspections, either under warrant or by consent. One of the notices also contained a recitation of 21 U.S.C. § 331(q), which makes it a crime to refuse entry to inspect records dealing with depressant and stimulant drugs. If the appellant warehouse managers read this statute quoted on the notice of inspection, they would have seen that it was wholly inapplicable to inspections of food warehouses.

There is a statute that makes it a crime to refuse entry to an FDA inspector seeking entry under § 374(a). 21 U.S.C. § 331(f). Prior to the searches in this case, *See* had of course rendered this statute unenforceable in the absence of warrant. Appellants contend that they were aware of this statute and therefore had reason to fear criminal prosecution if they refused entry. But knowledge of the provisions of § 331(f) did not vitiate the voluntariness of their consent. They were asked permission to search and voiced no objection. There is no indication that permission to inspect was granted solely out of fear of criminal sanction. On the contrary, it appears from defense counsel's own admission that he had advised the corporation and its officers to co-operate with FDA inspectors as a matter of sound business policy and not because he was unaware that he could force the inspectors to get search warrants. The managers' individual awareness of § 331(f) is thus unimportant; their consent was not given out of fear of criminal penalty but in accordance with company policy.

6. Appellants also contend that they should have been given *Miranda* warnings at the time of the search. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Such warnings were unnecessary since appellants were not in custody. *See* Spahr v. United States, 409 F.2d 1303 (9th Cir.), cert. denied, 396 U.S. 840, 90 S.Ct. 102, 24 L.Ed.2d 91 (1969).

7. The situation presented in United States v. J. B. Kramer Grocery Co., 418 F.2d 987 (8th Cir. 1969), is distinguishable in that in *Kramer* the FDA inspector insisted on his right to search without warrant over the objections of the warehouse manager.

Cong. & Admin.News 1953, at 2198–2205. The necessity and constitutionality of a surprise search was expressly upheld in *See,* 387 U.S. at 545 n. 6, 87 S.Ct. 1737. The definitions of adulterated food in 21 U.S.C. § 342(a) (3) and § 342(a) (4) are sufficiently definite to sustain a criminal prosecution. Golden Grain Macaroni Co. v. United States, 209 F.2d 166, 168 (9th Cir. 1953); Berger v. United States, 200 F.2d 818 (8th Cir. 1952). 21 U.S.C. § 336 giving the FDA discretion whether to proceed criminally or civilly is constitutional; the FDA is not required to prosecute every violation. United States v. 449 Cases Containing Tomato Paste, 212 F.2d 567, 572 (2d Cir. 1954). Nor need the FDA announce at the outset whether it wishes to proceed criminally or civilly. United States v. Kordel, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970).

Judgment affirmed.