UNITED STATES of America, Appellee,

v.

Charlie Lee POWELL, Appellant.

No. 12589.

United States Court of Appeals Fourth Circuit.

Argued Oct. 31, 1968.

Decided March 3, 1969.

Certiorari Denied June 16, 1969. See 89 S.Ct. 2113.

William H. Murdock, U. S. Atty., H. Marshall Simpson, Asst. U. S. Atty., Greensboro, N. C., for appellee.

Arthur J. Donaldson, Salisbury, N. C., for appellant.

Before HAYNSWORTH, Chief Circuit Judge, SOBELOFF, Circuit Judge, and McMILLAN, District Judge.

McMILLAN, District Judge:

Charlie Lee Powell was convicted by a jury in the United States District Court for the Middle District of North Carolina, Salisbury Division, on May 27, 1968, under an indictment charging him with (a) uttering or passing a counterfeit $20 bill; and (b) possessing some $3,-220 of other counterfeit money. He was sentenced to ten years imprisonment on each count, with the sentences to run concurrently. He appealed, assigning errors relating mainly to the second count.

The chief question raised by the appeal is the legality of the search of Powell's automobile.

The evidence on this question is brief but clear. About two o'clock in the afternoon of April 19, 1968, Sergeant Thomas Yow and Detective Lieutenant Tucker of the Kannapolis, North Carolina Police Department were patrolling Highway 29 and 85, a four-lane interstate road which passes north and south through Kannapolis. They were looking for an escaped convict who reportedly intended to rob a local bank. They saw a 1961 Mercury automobile with a Georgia license plate on it and occupied by three men traveling slowly north along the highway. The car belonged to the defendant. The car turned off the highway into a large shopping center. The police, on suspicion, followed and parked 'nearby. Charlie Powell, the appellant, and Harold Powell, his brother, got out of the car. Harold Powell, followed by Lieutenant Tucker, went into the nearby Clark's Department Store and bought some shoes with a $20 bill. Charlie Powell went into the A & P Store. Sergeant Yow followed Charlie Powell into

the A & P Store and watched him buy a carton of Winston cigarettes, get in line at the cashier's counter and pay for his cigarettes with a $20 bill.

Sergeant Yow went to the cashier and procured from her the $20 bill with which Powell had bought the cigarettes. Yow at that time judged and believed the bill to be counterfeit.

The officers followed the Powell car north along Highway 29 and 85 a short distance. At a stop light they parked behind the Powell car so that the two cars were blocking both traffic lanes. Sergeant Yow and Lieutenant Tucker approached the Powell car from both sides and placed the occupants under arrest while they sat in the car. Highway Patrolman Odom came along and stopped nearby. These activities blocked northbound traffic for "about a half a mile, as far as we could see." The officers seized the Powell car, placed the occupants in the police car and requested Highway Patrolman Odom to drive the Powell car. From the scene they drove a mile or more to the Kannapolis police department. The suspects were brought into the back door of the police department and searched. Thereafter, Sergeant Yow went out and looked in the car and saw a brown case in the back seat. This brown case contained counterfeit money. A black suitcase and a blue suitcase were found in the trunk of the car. The blue suitcase contained counterfeit money bearing Charlie Powell's fingerprints.

Charlie Powell had cashed a pay check in Georgia the previous day in an amount of between $140 and $150 but at the moment of arrest he had clutched in his hands some $282 of genuine currency, all of it in bills smaller than twenties. The defendants had spent the night in Charlotte and had taken between two and three hours to cover the distance [about thirty miles according to the map] from Charlotte to Kannapolis.

Eyewitnesses and fingerprint experts identified Charlie Powell as the person who passed the counterfeit $20 bill and as the owner of the blue suitcase in which other counterfeit money bearing his fingerprints was located.

Harold Powell and Thurston Fulford pleaded guilty of possession of counterfeit money. Harold Powell testified for the defendant Charlie Powell, but Charlie Powell did not testify in his own behalf. Harold Powell said the trio were on their way from Georgia to Baltimore to buy a large number of plastic jugs for Charlie Powell, but he never did say what the plastic jugs were for. Charlie Powell was stated to be a carpenter by trade.

The fruits of the search (counterfeit money and fingerprints) were not necessary to support Powell's conviction of uttering one counterfeit $20 bill; but they were necessary to support the conviction of possession of the $3,220 of other counterfeit money.

The appellant says the search of the car was unreasonable; that warrants are easy to get at a police station; and that if the evidence of $3,220 of counterfeit money in his suitcase with his fingerprints on it had been kept out of the case he could not have been convicted of possessing counterfeit money and in spite of the eyewitness testimony might not have been convicted of uttering the counterfeit $20 bill.

■ The question is "not whether it is reasonable to procure a search warrant, but whether the *search* was reasonable." United States v. Rabinowitz, 339 U.S. 56, 66, 70 S.Ct. 430, 435, 94 L.Ed. 653 (1950); Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967) (Emphasis added).

■ The search itself was reasonable. The appellant had been caught red-handed passing counterfeit money. He had his hands full of money in small bills at the moment of his arrest. The place of arrest was the automobile itself. The car and its occupants were under surveillance as suspects in a rumored bank robbery attempt; some apprehension by the police that the car might contain dangerous weapons under those facts would be reasonable. Some suspi-

cion of the existence of accomplices would also be reasonable. The car itself was subject to seizure and forfeiture and could lawfully be seized for evidence as a part of the arrest; 49 U.S.C. § 782; United States v. Trotta, 401 F.2d 514 (4th Cir., 1968); see United States v. Callahan, 256 F.Supp. 739 (D.Minn., 1964). With traffic blocked in two lanes for half a mile or more on an interstate highway, it was reasonable to move the site of the search a mile or so away to the police station. The car belonged to the defendant; the right to search without a warrant includes a contemporaneous search pursuant to lawful arrest and "extends to things over which the accused may have control * * * and, to an extent depending on the circumstances of the case, to the place where he is arrested." United States v. Trotta, 401 F.2d 514 (4th Cir., 1968).

In Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964), the search was held to be unreasonable. However, no evidence of crime except vagrancy had been discovered until the search took place. The search in *Preston* did not take place while the arrest and booking were going on, but took place much later in a garage to which the car had been towed and only upon the second trip by police or their agents (in addition to the towing trip) to the garage. In Cooper v. California, 386 U.S. 58, 87 S.Ct. 788 (1967), a search was upheld although conducted a full week later where the automobile was subject to seizure and was being properly held because of its use to transport contraband (narcotics).

■ In short, regardless of what may be said about the reasonableness of obtaining a search warrant, the record is full of support for the proposition that the search itself was thoroughly reasonable, and the evidence was properly used against the appellant.

■ Moreover, since the appellant was properly convicted on the count charging uttering a forged bill and the sentence on the uttering count and the possession count are the same length

and run concurrently, he really was not harmed by any of the alleged errors on the possession count; and the errors, even if they existed, are not prejudicial. United States v. Jacobs, 386 F.2d 170 (4th Cir., 1967); Lawn v. United States, 355 U.S. 339, 359, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958).

The remaining exceptions relate to allegedly prejudicial conduct of the prosecuting attorney.

■ Although the appellant did not testify, he called his brother, Harold Powell, as a witness. The prosecutor asked Harold Powell if the defendant didn't get the $280 in small bills from "cashing these counterfeit $20 bills all the way from Georgia into North Carolina." The witness denied knowledge of this. No error was committed. Evidence of other conduct, including criminal conduct, is competent if it tends to show the existence of a plan or design to commit the offense charged or to achieve some end of which the offense charged is a part or toward which it is a step. State v. Boynton, 155 N.C. 456, 71 S.E. 341 (1911) (Other liquor sales as showing habit of keeping liquor for sale); State v. Stancill, 178 N.C. 683, 100 S.E. 241 (1919) (Larceny of tobacco by confederates admitted to show common design to steal tobacco from neighborhood barns); State v. Stinson, 263 N.C. 283, 139 S.E.2d 558 (1965) (Prior larceny of automobile used for getaway).

■ The prosecutor argued to the jury that the defendant and his companions were "moving through North Carolina stopping and shopping at shopping centers * * * through the south just like Sherman passing this money." It is true that Sherman to former generations of North Carolinians was an unpopular individual and that the simile's impact might have been softened by a different choice of characters; but the evidence of possession of large quantities of counterfeit $20 bills; the eyewitness proof of the utterance of one of the bills; the defendant's fist full of small bills all below $20 in size; the reconnoi-

tering which preceded the stop at the shopping center and the fact that they had taken two or three hours to cover a distance which the map shows is scarcely thirty miles all give rise to inferences which support the basic suggestion that the prosecutor was making. The argument reasonably arises on the evidence. As to the argument concerning the intended use of the trailer load of plastic jugs which these three grown men were going to Baltimore to buy for Charles Powell, a carpenter, the witness's inability to say what the jugs were for and what a carpenter would have been doing with them—a trailer load of them—was a circumstance giving rise naturally to some speculation and inference; and we can not say that the comments of the prosecutor, though perhaps wide of the mark, were prejudicial. It is noteworthy that the prosecutor did contend or imply the defendants were involved in a common plan or scheme (Appendix 35A, 36A and 38A) to convert the counterfeit money into genuine currency. Since such a scheme is proved in part by the evidence and supported abundantly by other inferences from the evidence, no harm is seen in the comments made by the prosecutor.

Reading the testimony and the prosecutor's jury argument as a whole, and considering all the various errors assigned, we believe the prosecutor's actions to fall safely within the tolerances allowed a conscientious advocate in the trial of a contested action. United States v. Sawyer, 347 F.2d 372 (4th Cir., 1965), United States v. Browning, 390 F.2d 511 (4th Cir., 1968).

With regard to the issue of adequacy of trial counsel, we are inclined to agree with the attorney for the appellant that the point is frivolous. Nevertheless, we have reviewed on appeal all of the alleged errors which have been called to the attention of the Court by brief or argument, without regard to whether they were pointed out at the time of trial or whether exception was preserved, and we do not find any substance to any of them. In fact, to the extent that exception is made because defendant's trial counsel did not record more objections while the trial was going on, experience in the trial of cases strongly suggests that keeping quiet and letting harmless irrelevancies pass without emphasis was far more effective advocacy than making objections or asking for corrective instructions. We find no substance in the complaint about the way the appellant was represented in the trial.

We find no error; the judgment is Affirmed.