Donald L. CALL, Appellant,

v.

UNITED STATES of America, Appellee.

No. 22246.

United States Court of Appeals Ninth Circuit.

Oct. 27, 1969.

John B. Dickson (argued) and Joseph A. Adams, San Francisco, Cal., for appellant.

David P. Curnow (argued), Asst. U. S. Atty., Wm. Matthew Byrne, Jr., U. S. Atty., Robert L. Brosio, Asst. U. S. Atty., Crim. Div., Los Angeles, Cal., for appellee.

Before MERRILL and CARTER, Circuit Judges, and POWELL, District Judge.*

POWELL, District Judge:

The appellant appeals from his conviction of unlawful importation and possession of marihuana, 21 U.S.C. § 176a. The case was submitted on the record made at the hearing on the motion to suppress the evidence. The sole question here is whether the lower court erred in denying the motion. We hold that the motion was properly denied. We affirm.

We find that the officers had reasonable cause to believe that the defendant was committing an offense in their presence and that his arrest was lawful. Under the facts the initial arrest being lawful, the later search and seizure did not violate the appellant's Fourth Amendment rights.

The lobster season opened October 5, 1966 at 12:01 a. m. Two experienced wardens of the Fish and Game Department of California were patrolling for lobster poachers the evening of October 4, near Malibu. About 11:30 p. m. they were at Paradise Cove. It was cool and quiet. Warden DuPont noticed a sport fishing vessel "right in the breaker line almost on the beach". (R.T. 108). It had no lights and was in a hazardous position with the stern toward the beach. Occasionally the engine would be started.

Warden DuPont saw people moving around the boat and swimming in the waters between the boat and the shore. The wardens found a new location close to the boat. They saw three persons on the beach and a raft loaded with large bags being moved from the boat to the shore. The raft was then unloaded and the bags piled on the beach about 75 feet from the wardens who watched four or five such trips. The

---

* Charles L. Powell, United States District Judge for the Eastern District of Washington, sitting by designation.

bags resembled those used to transport lobsters.

After the raft made its last trip, someone said "That's all of them." (R.T. 119). Two persons on the beach started up a stairway carrying bags from the beach to the cliff-top. One individual, appellant, remained on the beach.

Warden DuPont then ran toward appellant and identified himself as a State Fish and Game Warden. Appellant was without a shirt and his pants were soaking wet. He had a duffel bag in his hands. The two persons who had started up the stairs ran and disappeared. The boat immediately got underway, running without lights. Appellant was asked what he was doing and his reply was, "We are just bringing stuff ashore". (R.T. 122).

The wardens were convinced that appellant was involved in taking lobsters illegally. Warden DuPont left appellant in the custody of his partner and ran after the two suspects who had gone up the stairs. On the top of the cliff was a station wagon with the tailgate down. On the tailgate was a duffel bag similar to the ones on the beach. Warden DuPont opened the bag expecting to find lobsters. Instead the bag contained a leafy green substance resembling marihuana.

He then followed two sets of damp footprints for a quarter of a mile to a camper truck. He looked inside the cab and saw a duffel bag similar to the ones on the beach, on the front seat. A note on

the turn indicator stated: "Jeff. Important. Get hold of Duncan as soon as possible. Raft will be in back of station wagon. I will be back at 11:30 p. m. Key to truck on visor. Tonight. Pete". (R.T. 132).

The warden took the keys and returned to the station wagon where he met his partner and the appellant. Appellant was advised of his constitutional rights and placed under arrest for a new offense, violation of state narcotics laws. The inventory of the contents of the duffel bags revealed 1322 pounds of marihuana.

## I. Arrest

By sheer chance appellant and his companions chose the eve of the opening day of the lobster season for their unloading operation. The wardens with commendable zeal apprehended appellant for lobster poaching, a state offense they had reasonable cause to believe was committed in their presence.[1]

■ Whether appellant was physically arrested when first detained is a question of state law, subject to constitutional standards. United States v. Di Re, 332 U.S. 581, 589, 68 S.Ct. 222, 92 L. Ed. 210 (1948); Wilson v. Porter, 361 F.2d 412, 416 (9th Cir. 1966); Wartson v. United States, 400 F.2d 25, 27 (9th Cir. 1968).

California has said of custody:

"A temporary detention may be akin to an arrest inasmuch as during the time of such detention, the person detained, if he is physically deprived of

---

1. The California Fish and Game Code, Sections 8251 and 2001, describe the crimes of lobster poaching and unlawful possession of lobsters as follows:

"Spiny lobsters may be taken only between the first Wednesday in October and the first Wednesday after the 15th of March. Lobster traps may be set and baited 24 hours in advance of the opening date of the lobster season if no other attempt is made to take or possess the lobsters." Section 8251
and,

"Unless otherwise provided, it is unlawful to possess birds, mammals, fish, or amphibia *except during the open season where taken and for 10 days thereafter*

* * *." Section 2001. (Emphasis added.)
The violation of either of these laws is a misdemeanor. California Fish and Game Code, Section 12000.

Before lobster season had opened at 12:01 a. m. on the morning of October 5, Warden DuPont witnessed the activities which gave him reasonable cause to believe that lobsters had been taken in violation of Section 8251 of the Fish and Game Code and were in the unlawful possession of appellant in violation of Section 2001. Appellant's possession continued until his arrest at approximately 12:10 a. m. and therefore remained unlawful.

his freedom of action in any significant way, may be considered to be in custody." People v. Villareal, Cal. App., 68 Cal.Rptr. 610, 614 (1968).

To the same effect, see: People v. Arnold, 66 Cal.2d 438, 58 Cal.Rptr. 115, 426 P.2d 515 (1967).[2]

The Supreme Court has stated there is sufficient custody to effect an arrest when a person is restricted in his liberty of movement.

"When the officers interrupted the two men and restricted their liberty of movement, the arrest, for purposes of this case, was complete." Henry v. United States, 361 U.S. 98, 103, 80 S. Ct. 168, 171, 4 L.Ed.2d 134 (1959).

█ We are of the opinion that appellant was taken into custody and lawfully arrested when he was first detained on the beach. The events that followed were interrelated and connected to the lawful arrest.

## II. Search and Seizure

█ The warden searched the duffel bag on the open tailgate of the station wagon after appellant was lawfully arrested. The most recent pronouncement of the Supreme Court in the area of search and seizure incident to arrest is Chimel v. United States, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). There it was held that a search incident to a lawful arrest in a residence may not go beyond the area from which the person arrested might obtain weapons or evidentiary items. The effect is to limit the scope of residential searches once allowed under authority of United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950) and Harris v. United States, 331 U.S. 145, 67 S. Ct. 1098, 91 L.Ed. 1399 (1947). The court in Chimel observed in the opinion in footnote 9 that:

"Our holding today is of course entirely consistent with the recognized principle that, assuming the existence of probable cause, automobiles and other vehicles may be searched without warrants 'where it is not practicable to secure a warrant, because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.' Carroll v. United States, 267 U.S. 132, 153 [45 S.Ct. 280, 285, 69 L.Ed. 543]; see Brinegar v. United States, 338 U. S. 160 [69 S.Ct. 1302, 93 L.Ed. 1879]."

█ It is concluded that the law prior to Chimel controls the search of motor vehicles. This would include the search and seizure of the duffel bag found on the tailgate of the station wagon, which bag could have been quickly moved.

Two suspects were still at large. Presumably they had the keys to the station wagon. If the bag was not immediately searched and seized there was a likelihood that the car and its contents would be driven away. See Travis v. United States, 362 F.2d 477, 480, 481 (fn. 3) (9th Cir.), cert. den. 385 U.S. 885, 87 S.Ct. 179, 17 L.Ed.2d 113 (1966).

" * * * Where it is not practicable to secure a warrant to search a vehicle for contraband goods because the vehicle can be quickly moved out of the locality or jurisdiction, the vehicle may

---

2. California Penal Code, Section 836 in part provides:

"*A peace officer may* make an arrest in obedience to a warrant, or may, pursuant to the authority granted him by the provisions of Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2, *without a warrant, arrest a person:*

1. Whenever he has reasonable cause to believe that the person to be arrested has committed a public offense in his presence." (Emphasis added.)

And, California Penal Code, Section 841 provides, in pertinent part:

"The person making the arrest must inform the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it, *except when the person making the arrest has reasonable cause to believe that the person to be arrested is actually engaged in the commission of or an attempt to commit an offense, or the person to be arrested is pursued immediately after its commission, or after an escape.*" (Emphasis added.)

be searched by a proper official then having probable cause to believe that the vehicle contains such goods. * * "

See Dyke v. Taylor Implement Co., 391 U.S. 216, 88 S.Ct. 1472, 20 L.Ed.2d 538 (1968); Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967); Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302 (1949); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280 (1925).

Appellant contends that the search and seizure of the duffel bag from the station wagon was unwarranted because approximately thirty additional bags remained on the beach. We find against him. An officer of the law has the duty and the right to seize all fruits of the crime if as in *Travis, supra,* they may be secreted or destroyed. Boyden v. United States, 363 F.2d 551, 553 (9th Cir.) cert. den. 385 U.S. 978, 87 S.Ct. 521, 17 L.Ed.2d 440 (1966), rehr. den. 385 U.S. 1021, 87 S.Ct. 724, 17 L.Ed.2d 561 (1967).

Affirmed.