James A. HEFFLEY, Appellant,

v.

Carl HOCKER, Warden, Nevada State
Prison, Appellee.

No. 22661.

United States Court of Appeals
Ninth Circuit.

Dec. 9, 1969.

Powell, District Judge, dissented.

James A. Heffley, in pro. per.

Harvey Dickerson, Atty. Gen. of Nevada, Carson City, Nev., for appellee.

Before HAMLEY and MERRILL, Circuit Judges, and POWELL, District Judge.*

HAMLEY, Circuit Judge:

James Alvin Heffley, serving a life sentence in Nevada State Penitentiary, appeals from an order denying his application for a writ of habeas corpus.

Heffley's incarceration is pursuant to a burglary conviction and a subsequent habitual criminal conviction obtained in 1966. The burglary conviction was upheld on appeal on March 20, 1967, one justice dissenting. Heffley v. State, 83 Nev. 100, 423 P.2d 666 (1967).

Heffley alleged in his application for a writ that he was deprived of his Fourth Amendment rights because documents seized during an illegal search of his automobile were received in evidence against him at his state burglary trial.

The facts pertaining to the seizure of these documents are not in dispute. On November 13, 1965, Officer George Santich of the Sacramento, California police department, received an order to investigate a report that a person driving a 1957 blue and white Buick with license number LUS 507 was trying to sell some

* The Honorable Charles L. Powell, United States District Judge for the Eastern District of Washington, sitting by designation.

guns. Sometime thereafter Santich saw this automobile being driven along a Sacramento street. Santich drove along behind the Buick until it stopped for a traffic light. He then got out of the police car and approached the other car. As he did so he observed a large quantity of guns, partially covered up, on the back seat of that vehicle.

Santich asked the driver of the Buick, Heffley, for his identification and driver's license. As Heffley was in the process of getting his wallet, Santich observed the butt end of a gun protruding from under the seat where Heffley was sitting. He then asked Heffley to get out of the car, and placed him under arrest for possession of the gun. Santich did not have a warrant for Heffley's arrest. The officer called for another squad car to take Heffley to police headquarters. Santich then drove Heffley's car about three blocks to the same police station.

Although Officer Santich looked over the guns in the back seat of the Buick when he arrested Heffley, he made no exploratory search of the car at that time. Heffley was removed to the police station within three minutes after the arrest. Santich placed the Buick in a private stall at the police station and, without a search warrant, immediately searched "the whole car, the trunk, back seat, under the hood, wheels, and everything." Heffley was in police custody in another part of the police station at that time. After the search was completed, the car was taken to a private garage and impounded.

In the course of his search, Santich found the documents in question on the rear floor of the Buick. He had not seen them before conducting this search. The documents consisted of two passports, a certificate of registration for a two-wheel trailer, and a certificate of ownership for a one-half ton pickup. All of these papers had been stolen during the burglary for which Heffley was convicted. They were received in evidence over the objection of Heffley's counsel that they were obtained as a result of an illegal search and seizure.[1]

The district court questioned whether there was a search at all, under these facts, pointing out that most of the articles seized were in plain view in the rear portion of the sedan. The court conceded, however, that the documents here in question may have been covered or obscured by the guns and other paraphernalia.

In all probability, the documents were not visible from outside the automobile, since Officer Santich testified that he had not seen them before conducting the search. In any event, if it be assumed that the documents were plainly visible so that no search was required, that alone would not validate the *seizure* of the documents without first obtaining a search warrant. Amendment IV proscribes unreasonable *seizures* as well as unreasonable searches. See Pendleton v. Nelson, 404 F.2d 1074 (9th Cir. 1968).[2]

The facts of this case are distinguishable from those of Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L. Ed.2d 1067 (1968), in which a police seizure of a registration card found in an impounded automobile was upheld. While there was a police search of the Harris automobile, the court stated that

1. Heffley's trial counsel did not make a particularly forceful objection to the introduction of these documents. However, any problems of waiver were cured by the Supreme Court of Nevada's consideration of the search and seizure question on the merits. See Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 297, n. 3, 87 S.Ct. 1642, 18 L.Ed.2d 782; Curry v. Wilson, 405 F.2d 110, 112 (9th Cir. 1968).

2. We there stated:
   "The view of the [evidence] through the window may have provided probable cause to obtain a search warrant but, since no exigent circumstances were shown to exist, such view did not authorize a seizure without such a warrant or consent." 404 F.2d at 1077.

the registration card was not discovered or seized while the police were conducting the search.

The impounded car was being held in a place open to the weather and it had begun to rain. The windows of the car were rolled down and the doors were unlocked. The officer opened the front door on the passenger side "in order to secure the window and door." As he did so he saw the registration card lying face up on the metal stripping over which the door closed. The Supreme Court held that since the officer had a right to open the door in his effort to protect the vehicle, he had a right to seize the card which was then plainly visible and could be obtained without an unauthorized entry. The Court made it clear that, with regard to the registration card, no entry into the vehicle for the purpose of search, or even for the purpose of seizing a card visible from the outside, was involved. It was in this context that the *Harris* Court said:

> "Nothing in the Fourth Amendment requires the police to obtain a warrant in these narrow circumstances.
>
> "Once the door had lawfully been opened, the registration card, with the name of the robbery victim on it, was plainly visible. It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. Ker v. State of California, 374 U.S. 23, 42–43, 83 S.Ct. 1623, 1634, 1635, 10 L.Ed.2d 726 (1963); United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L. Ed. 1202 (1927); Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924)."

In our case the officer saw, from a point outside the car, weapons on the back seat of the car. The removal of the guns would probably have revealed the documents in question without the need of a further search or possibly, as the district court thought likely, the documents might themselves have been visible from the outside. But the officer still could not enter the unoccupied car after it reached the police garage without a warrant to search and seize, except for some other appropriate reason as in *Harris*. In *Harris* the officer's presence in the car was lawful—he was engaged in protecting the car by rolling up the windows and locking the doors. In our case, the officer's presence in the car was not lawful, for he was engaged in a seizure, if not a search, without a warrant. The "narrow circumstances" of *Harris* are not present here.

But the district court did not rely solely on the possibility that the documents were visible. That court's primary reason for denying the habeas application was that where, as here, the accused was arrested in his automobile in a traffic lane on a public street, a search of the vehicle made immediately after removal of the car to a nearby police station should be considered incident to and substantially contemporaneous with the arrest, and therefore reasonable under the Fourth Amendment.

The majority of the courts of appeals that have dealt with the problem support this view. See Price v. United States, 121 U.S.App.D.C. 62, 348 F.2d 68 (1965); United States v. Dento, 382 F. 2d 361, 365–366 (3rd Cir.1967); United States v. Powell, 407 F.2d 582, 585 (4th Cir.1969);[3] United States v. Evans, 385

3. In *Powell*, however, the court also pointed out that the automobile in question was subject to forfeiture under 49 U.S.C. § 782 because it was being used to carry contraband (counterfeit money). *Id.* at 585. This would appear to bring that case under the exception recognized in Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).

Moreover, in *Powell*, the court observed that if the reception of the seized articles deprived the defendant of his Fourth Amendment rights, the error was not prejudicial because at the same trial Powell was also convicted of uttering a forged bill, for which he received a concurrent sentence. 407 F.2d at 585.

F.2d 824, 825 (7th Cir. 1967).[4] *Contra:* Barnett v. United States, 384 F.2d 848, 860–861 (5th Cir. 1967); Colosimo v. Perini, 415 F.2d 804 (6th Cir. 1969).[5]

The definitive Supreme Court decision in this area is Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). In that case the police arrested three men for vagrancy after receiving a report that the men were "acting suspiciously" because they had spent most of the night seated in a motorcar parked in a business district. The three men were immediately searched for weapons at the scene and then taken to police headquarters. Subsequently the police towed the car, which had not been searched at the scene of the arrest, to a garage and twice searched it. This search turned up evidence of a planned robbery, for which the trio was convicted. The police acted without a warrant in conducting this search and attempted to justify it on the ground that it was incidental to a lawful arrest. The Court rejected this argument, holding expressly that:

> "Once an accused is under arrest and in custody, then a search [of his automobile] made at another place, without a warrant, is simply not incident to the arrest." *Preston*, at 367, 84 S. Ct. at 883.

The *Price, Dento, Powell* and *Evans* cases cited above were decided after *Preston*. In each, the court sought to distinguish *Preston* because the time interval between arrest and search was shorter than in *Preston*; or because, unlike *Preston*, a search of the vehicle on street was impracticable due to traffic or a gathering crowd; or because, unlike *Preston*, the search was related to the charge upon which the arrest was made; or because the accused was present when the search was made at the police station. In *Barnett* and *Colosimo, Preston* was held to be applicable despite factual differences of this kind.

Appellee attempts the same kinds of distinction between the facts of the instant case and those of *Preston*, claiming, for example, that the time lag and distance involved here were much less. However, reading the *Preston* precedent literally, as this court has consistently done in the past, we do not believe such distinctions are valid. See Pasterchik v. United States, 400 F.2d 696, 699 (9th Cir. 1968); Schoepflin v. United States, 391 F.2d 390, 393 (9th Cir. 1968); Lucero v. Donovan, 354 F.2d 16, 20 (9th Cir. 1965). The above-quoted language from the *Preston* decision is in such categorical form that any disposition to relax the application of the rule announced there should appropriately come first from the Supreme Court.

The Supreme Court has not indicated approval of any such dilution of the *Preston* holding, but has, in fact, recently made it clear that *Preston* is to be stringently applied. Late last term in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the Court emphasized the continued breadth and vitality of the *Preston* holding that an incidental search must be conducted at the same time and place as the arrest. There the Court cited *Preston* as authority for a sharp curtailment of the permissible scope of a warrantless search of a home conducted pursuant to a lawful arrest. The Court quoted with approval the following language from *Preston*:

> "The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things

4. The force of the *Evans* decision was somewhat undercut by the Seventh Circuit's subsequent decision in United States v. Harvey, 397 F.2d 526, 528–529 (7th Cir. 1968).

5. In *Colosimo*, the Sixth Circuit withdrew from the position it had previously taken

in Arwine v. Bannan, 346 F.2d 458 (6th Cir. 1965), and Crawford v. Bannan, 336 F.2d 505 (6th Cir. 1964), that Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777, could be distinguished on the facts.

which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest." 395 U.S. at 764, 89 S.Ct. at 2040, quoting from 376 U.S. at 367, 84 S.Ct. 881.

In very similar language *Chimel* holds that a warrantless search of a residence, incident to a lawful arrest, may not go beyond the person of the accused "and the area from within which he might have obtained either a weapon or something that could have been used as evidence against him." 395 U.S. at 768, 89 S.Ct. at 2043. However, we do not here rely on the *Chimel* holding as such because the rule of *Chimel* does not apply to searches conducted before June 23, 1968, the date of the *Chimel* decision.[6] Our holding here rests directly on *Preston*, forcefully adhered to in *Chimel*.

In the only other court of appeals case decided since *Chimel*, this same view concerning the significance of *Chimel* in construing *Preston* has been expressed. We refer to Colosimo v. Perini, decided by the Sixth Circuit on September 17, 1969.[7]

The "justifications" for a warrantless search found absent in *Preston* were similarly lacking here. When the search of Heffley's automobile was made at the police station, Heffley was not in the vehicle nor in its immediate vicinity. He was in another part of the building in police custody. At that time he had no power to obtain from the interior of the automobile either a weapon or something that could have been used as evidence against him. This is the critical fact. The circumstances that the search was conducted shortly after the arrest, and that it was impracticable to search the automobile on the street, are immaterial. It was practicable for police officers to obtain a search warrant before making the search. The automobile, after being removed to the police station, was in no danger of being ransacked or moved without police approval.[8]

6. The question of the retroactivity of *Chimel* was expressly left open by the Supreme Court in Von Cleef v. New Jersey, 395 U.S. 814, 815, 89 S.Ct. 2051, 23 L.Ed.2d 728 (1969) and Shipley v. California, 395 U.S. 818, 819, 89 S.Ct. 2053, 23 L.Ed.2d 732 (1969), and by this circuit in Jordan v. United States, 416 F.2d 338 (9th Cir. 1969), decided September 15, 1969. However, in Williams v. United States, 418 F.2d 159 (9th Cir. 1969), decided October 17, 1969, we held *Chimel* to be applicable only as to searches made on or after June 23, 1969.

7. In *Colosimo*, the Sixth Circuit said:
"We are now of the view, however, that since we made those decisions, and since the District Judge's ruling here, further illumination of the *Preston* decision by the Supreme Court in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), requires a different result. In a case as this where there was sufficient opportunity to procure a search warrant after the defendant was arrested and taken to the police station and while the automobile to be searched remained in police custody, the search of an automobile without a warrant, away from defendant's person, cannot stand Fourth Amendment attack.

*       *       *       *       *

"With the person, or persons, suspected of crime and the automobile to be searched both in police custody, the precipitous action of a warrantless search is no longer justified. It is true that in *Preston* the vehicle was searched at a point away from the scene of arrest, while here the vehicle remained at the place where the defendant was arrested. *Chimel*, however, persuades us that such factual distinction is not of controlling importance. We believe that *Chimel* instructs us that the rule of *Preston*, decided prior to the trial here involved, is the law that controls this case. Therefore, we need not consider whether *Chimel* is to be given retrospective effect. The evidence seized should have been suppressed."

8. The Nevada Supreme Court upheld the search of Heffley's car at the police station on the theory that it was meant solely to inventory Heffley's belongings for safekeeping. Since the court did not view Santich's actions as an exploratory search, there was no need to decide whether it was incident to a lawful arrest. Heffley v. State, 83 Nev. 100, 423 P.2d 666 (1967). In this habeas proceeding the district court declined to adopt this theory and, on this appeal, the warden

■ Under *Preston*, read in the light of *Chimel*, the warrantless search of Heffley's automobile at the station was in violation of the Fourth Amendment.[9] Accordingly, the introduction at the burglary trial of the documents seized as a result of that search deprived him of his rights under the Fourth and Fourteenth Amendments, Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), and entitled him to habeas relief.

Heffley also alleged in his habeas application that the prosecution's introduction of incriminating statements made by Heffley while in police custody violated his constitutional rights, because such statements were obtained through the use of the illegally-seized documents referred to above. The district court did not reach this question since it held that the documents were not illegally seized. This is a matter to be explored in the further proceedings that may follow this opinion.

■ In his reply brief on this appeal, Heffley argues for the first time that his arrest was illegal because it was not pursuant to a warrant nor based upon probable cause. Apart from the untimeliness of this point, it is moot. The legality of the arrest would be material only with regard to the lawfulness of the search and seizure. Since we have already held that the search and seizure was unlawful, Heffley will not benefit further from a holding that the arrest was also illegal.

The judgment is reversed and the cause is remanded with directions to allow the state a reasonable time within which to retry Heffley on the burglary charge, failing which the district court shall issue a writ of habeas corpus.

POWELL, District Judge (dissenting).

I would affirm and hold that the seizure of the incriminating documents falls within the rule announced in Harris v. United States, 390 U.S. 234, 236, 888 S.Ct. 992, 993, 19 L.Ed.2d 1067 (1968), where the Court held:

"It has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. Ker v. State of California, 374 U.S. 23, 42–43, 83 S.Ct. 1623, 1634, 1635, 10 L.Ed.2d 726 (1963); United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927); Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924)."

In *Harris*, an officer was examining the defendant's car for the purpose of removing any valuables. When he

---

does not defend the search on that ground. Whatever merit there may be to an "inventory" exception to the general search warrant requirement, the undisputed evidence here demonstrates that the purpose of the search of Heffley's automobile was exploratory. There is no other reasonable explanation for Officer Santich's search "nder the hood, wheels, and everything," as he testified.

9. To be distinguished are cases in which the automobile is or may be held as contraband, Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967); United States v. Powell, 407 F.2d 582 (4th Cir. 1969); where a stolen automobile is being held for the rightful owner, Schoepflin v. United States, 391 F.2d 390 (9th Cir. 1968); or where articles are discovered while police are taking measures to protect an automobile after the

occupant has been arrested. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968).

It should also be clear from the foregoing discussion that we are not here concerned with the search of an automobile under circumstances where it is not practicable to secure a warrant because the vehicle or its contents can be quickly moved out of the locality or jurisdiction in which the warrant must be sought. The continued validity of this distinction was made clear in *Chimel*, footnote 9, and in Call v. United States, 417 F.2d 462 (9th Cir. 1969), decided October 27, 1969. In the latter case a warrantless search of a duffel bag found on the tailgate of a parked station wagon was upheld because the bag "could have been quickly moved."

opened the door to the vehicle he viewed a registration certificate. The document was seized and used to incriminate the defendant at trial. The examination was conducted pursuant to a police regulation, and as in the instant case, the evidence was seized without a warrant and while the defendant was incarcerated in the station house.

Defendant Heffley was arrested for illegal possession of a gun. At the scene of arrest the officers viewed, in bulk, the following items lying in the back portion of the vehicle: six shotguns, two rifles, two pistols, four cameras, field glasses, a timing light and various papers. The documents in issue were either underneath the weapons or lying next to them.[1] When Heffley's vehicle was later taken to the police station Officer Santich seized the weapons and the documents.

Assuming the two passports and the two certificates of registration were not visible from outside the vehicle, it does not follow that they could not be seized by the officer once he was lawfully in the vehicle. As in *Harris*, if the officer's presence in the car is lawful, he can seize evidentiary items falling into view at that time. In this case, Officer Santich's presence in the vehicle was the result of the view of the weapons he had at the scene of arrest, and therefore lawful.

The majority opinion is correct in stating "* * * [t]he 'narrow circumstances' of *Harris* are not present here." *Majority Opinion* supra p. 883. In *Harris*, the officer did not have a view of any incriminating objects before he entered the vehicle. The entrance there was justified under a police regulation. In this case the officer had the view *before* he entered the vehicle, and, as Harris clearly holds, those objects so viewed were subject to immediate seizure. Therefore I cannot agree that the offi-

cer in Sacramento had no right to enter and remove the guns or that he was required to get a search warrant to seize additional objects he saw once he was within the vehicle.

Adopting the reasoning of the majority opinion based on Pendleton v. Nelson, 404 F.2d 1074, 1077 (9th Cir. 1968), the officer in *Harris*, could not have seized the incriminating documents without first obtaining a warrant. His seizure would be unreasonable since no exigent circumstances existed justifying a warrantless seizure.

Such reasoning does violence to the *Harris* opinion, and the premise upon which the United States Constitution should be interpreted "There is no war between the Constitution and common sense." Mapp v. Ohio, 367 U.S. 643, 657, 81 S.Ct. 1684, 1693, 6 L.Ed.2d 1081 (1961).

Decisions involving facts similar to those before us have sustained the validity of the seizure without a warrant. See e.g., Leffler v. United States, 409 F.2d 44, 50 (8th Cir. 1969); Creighton v. United States, 132 U.S.App.D.C. 115, 406 F.2d 651, 652 (1968); People v. Harris, 67 Cal.2d 866, 64 Cal.Rptr. 313, 434 P.2d 609 (1968). Cf. United States v. Riso, 405 F.2d 134 (7th Cir. 1968), cert. denied 394 U.S. 959, 89 S.Ct. 1306, 22 L.Ed.2d 560 (1969). Nor is a warrant required under authority of *Harris*, supra, to inspect evidence in possession of police. Westover v. United States, 394 F.2d 164, 165 (9th Cir. 1968).

There is no argument with the proposition that the officers could have seized the items at the scene of arrest—regardless of the feasibility of obtaining a warrant.

"The practicability of obtaining a warrant is not the controlling factor when a search is sought to be justified as incident to arrest, * * *."

---

[1]. The "record" supports the findings of the district court below that: " * * * Most of the articles seized were in plain view in the rear portion of the sedan, and the evidentiary items essential to the Nevada prosecution were there found, although *they may have been covered or obscured by the guns* and other paraphernalia." (Emphasis added) Record at 137.

Ker v. California, 374 U.S. 23, 41, 83 S.Ct. 1623, 1634, 10 L.Ed.2d 726 (1963).

Instead, the officers drove the vehicle three blocks from the scene of arrest and there immediately seized the incriminating documents. If exigent circumstances were required it would seem that the public safety factor resulting from police procedures utilized in this case suffice.[2] The officers here should be commended not condemned.

I would also affirm on other grounds. The seizure here was not "* * * remote in time or place from the arrest." Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964). Under the circumstances present here the availability of warrant process is not determinative. Ker v. California, supra.

The majority opinion places this Circuit in the minority of the jurisdictions which have decided this question. Majority Opinion supra p. 883. This position is not heretofore reflected by our previous holdings. Pasterchik v. United States, 400 F.2d 696 (9th Cir. 1968) (evidence suppressed where some four hours after accused was arrested F.B.I. agents went to his home and searched his car located in the garage). Schoepflin v. United States, 391 F.2d 390 (9th Cir.), cert. denied 393 U.S. 865, 89 S.Ct. 146, 21 L.Ed.2d 133 (1968), (search held violative of Preston, supra, where F.B.I. agent was called into case and searched accused's car at police garage some two hours after arrest). Lucero v. Donovan, 354 F.2d 16 (9th Cir. 1965) (evidence suppressed where accused was picked up on the street, driven to his place of residence, and residence searched). In each of the above cases the location of the

search was either distant from the place of arrest or the lapse of time from arrest to search exceeded two or more hours.

The majority would find support in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) notwithstanding this Circuit's recent decision limiting Chimel to prospective application. Williams, et al. v. United States, 418 F.2d 159 (9th Cir. Decided Oct. 17, 1969). In so doing law enforcement officials are held to a standard in 1965, announced in 1969. The arrest and search in this case occurred on November 13, 1965.

I do not find a reference in the Chimel opinion that indicates Preston is to be "stringently" applied as the majority states. On the contrary that opinion specifically excludes certain automobile searches.[3] Preston is cited as authority in Chimel but the Supreme Court has not enlarged that holding even though opportunity to do so has existed.[4]

This Court should favor the reasoning of the Eighth Circuit in Leffler v. United States supra, where Judge Mehaffy, writing in a case similar to this one, says:

"* * * We must bear in mind that the Fourth Amendment denounces only unreasonable searches and seizures, and if the criminal laws of this country are to be enforced and law-abiding citizens protected, care should be taken not to place a doctrinaire or hypertechnical interpretation upon the plain and simple language of the Constitution in our zeal to protect the rights of those charged with crimes." Leffler v. United States, 409 F.2d 44, 49 (8th Cir. 1969).

I would affirm.

---

2. Heffley's car was stopped on a three lane one way street. Cars were backed up behind the scene of arrest and were forced around in order to resume their travel. (Record at 33 and 36). See Morris v. Boles, 386 F.2d 395 (4th Cir. 1967), cert. denied 390 U.S. 1043, 88 S.Ct. 1640, 20 L.Ed.2d 304 (1968), where

the needs of crowd control and protection of the prisoner warranted removal of the car and a subsequent search.

3. 395 U.S. at 764 fn 9, 89 S.Ct. 2034.

4. See e. g., Cooper v. California, 386 U.S. 58, 62, 65, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967) (dissent).