**Peter RAMON, Jr., Appellant,**

v.

**Hoyt C. CUPP, Warden Oregon State Penitentiary, Appellee.**

**No. 24056.**

United States Court of Appeals, Ninth Circuit.

Feb. 26, 1970.

Herbert Titus (argued), Eugene, Or., Jonathan Ater, Portland, Or., for appellant.

Jacob B. Tanzer, David H. Blunt, Asst. Attys. Gen., Lee Johnson, Atty. Gen., State of Oregon, Salem, Or., for appellee.

Before BARNES, ELY and HUFSTEDLER, Circuit Judges.

ELY, Circuit Judge.

Ramon is an Oregon state prisoner, convicted in 1965 for the possession of marijuana. His appeals through the Oregon courts resulted in rejection of his contention that evidence introduced at his trial was seized in violation of his Fourth Amendment rights. His petition for habeas corpus in the District Court was denied after an evidentiary hearing.

On August 17, 1965, a member of the police force of Baker, Oregon was informed that three people dealing in marijuana could be found at a certain bar. He went to the bar and struck up a conversation which led to his purchase of some marijuana from one of the three, not Ramon. By prearranged signal, all four (the three suspects and the police officer) were arrested for public intoxication. Ramon, one of the three arrested suspects, had left his automobile parked on the street near the bar. Instead of seizing the automobile immediately, the police decided to keep it under surveillance in the place where it was parked. Two days later the car was towed to the police garage and searched. Several packages of marijuana were discovered in the automobile, seized, and subsequently received as prosecution evidence in Ramon's trial.

Ramon has contended, throughout the long history of his case, that the warrantless search, conducted some 32 hours after his arrest for public intoxication, was remote in time and place from the arrest and therefore unreasonable. The Oregon trial court found that the vehicle might lawfully have been searched at the time of the arrest and that the delay was not unreasonable under the circumstances. This conclusion was upheld by the Oregon Supreme Court and by the District Court.

For the purposes of this opinion we may assume that a search of the auto-

mobile might have lawfully been made at the time of arrest. The theory upon which the search has previously been upheld is somewhat hybrid, arising from two types of justifications recognized by the Supreme Court. If the search was incident to a valid arrest, then the officers were entitled to search the area within the control of the accused for the purpose of locating weapons that could be used against the officers or evidence that could be readily destroyed. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). In addition, if the officers had probable cause to believe that the automobile was being used at that time to transport contraband and if procuring a search warrant might afford opportunity for quick removal of the vehicle from the jurisdiction, then such exigent circumstances will justify a warrantless search. Carroll v. United States, 267 U.S. 132, 153, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

Exigencies do not exist when the vehicle and the suspect are both in police custody. Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964). In *Preston*, the Court, in referring to the considerations mentioned above, emphasized that "these justifications are absent where a search is remote in time or place from the arrest." *Id.* at 367, 84 S.Ct. at 883.

In Heffley v. Hocker, 420 F.2d 881 (9th Cir. 1969), our court observed that several courts have, despite *Preston*, upheld searches wherein the time lag has been shorter than in *Preston*, or upon the basis of impracticability of searching the vehicle on the street, or wherein the search has been directly related to the offense for which the arrest was made, or wherein the accused has been present during the search.[1] Nevertheless, *Heffley* reaffirmed our court's consistent position [2] that we are

---

1. *See. e. g.*, United States v. Powell, 407 F.2d 582 (4th Cir. 1969) ; United States v. Evans, 385 F.2d 824 (7th Cir. 1967) ; United States v. Dento, 382 F.2d 361 (3d Cir. 1967) ; Price v. United States, 121 U.S.App.D.C. 62, 348 F.2d 68 (1965).

2. *See* Pasterchik v. United States, 400 F.2d 696 (9th Cir. 1968) ; Schoepflin v. United States, 391 F.2d 390 (9th Cir. 1968) ; Lacero v. Donovan, 354 F.2d 16 (9th Cir. 1965).

obliged to respect the literal language of *Preston* and that we should not attempt, by fine distinctions, to escape its control.

*Heffley* itself was a case in which a strong showing for distinguishing *Preston* was made. The defendant had been arrested following a report that he had attempted to sell several weapons. The officer who stopped his automobile was able to observe several weapons through the window of the vehicle, but no seizure of the weapons was made at the time of arrest. The car was driven to the police station by the arresting officer, who then made an exploratory search and uncovered documents that were introduced at the suspect's trial for a robbery offense. Our court emphatically refused to limit *Preston* and stated:

"The 'justifications' for a warrantless search found absent in *Preston* were similarly lacking here. When the search of Heffley's automobile was made at the police station, Heffley was not in the vehicle nor in its immediate vicinity. He was in another part of the building in police custody. At that time he had no power to obtain from the interior of the automobile either a weapon or something that could have been used as evidence against him. This is the critical fact. The circumstances that the search was conducted shortly after the arrest, and that it was impracticable to search the automobile on the street, are immaterial. It was practicable for police officers to obtain a search warrant before making the search. The automobile, after being removed to the police station, was in no danger of being ransacked or moved without police approval."

*Id.* at 885. Similarly, after Ramon was arrested and taken to the police station along with his companions, there was then no threat that any of the trio could steal off with evidence or obtain weapons from the remote automobile.[3] At the time of the search, the automobile was also in custody, eliminating any supposed threat that third parties might enter the car. Thus, the rule of *Preston* and *Heffley* clearly applies, absent some factor requiring that the rule be overridden.

Oregon argues that no warrant was required because the automobile had been taken into custody pursuant to forfeiture proceedings. This argument is based on an exception to the *Preston* rule, announced by the Supreme Court in Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). There, the Court departed from the requirement of exigency and held that a search of an automobile may be conducted if the vehicle has been impounded and is being held as evidence in a forfeiture proceeding. In *Cooper*, the police were required by state law to retain the vehicle until forfeiture proceedings were concluded.[4] In these circumstances, the Court reasoned, it would have been unreasonable to require the police to hold the vehicle for an indefinite period with-

---

3. The state attempts to justify the delay by arguing that it was necessary to run lab tests on the sample sold to the police, that the police desired to maintain the vehicle under surveillance, and that they wished to ask the city attorney whether there was probable cause to conduct a search. These purported excuses for the delay convince us that the police had more than ample opportunity to secure a search warrant.

4. Cal.Health & Safety Code § 11611:
   "*Seizure and delivery to state division.* Any peace officer of this State, upon making or attempting to make an arrest for a violation of this division, shall seize any vehicle used to unlawfully transport any narcotic or to facilitate the unlawful transportation of any narcotic, or in which any narcotic is unlawfully kept, deposited or concealed or which is used to facilitate the unlawful keeping, depositing or concealment of any narcotic, or in which any narcotic is unlawfully possessed by an occupant thereof, or which is used to facilitate the unlawful possession of a narcotic by an occupant thereof, and shall immediately deliver such vehicle to the Division of Narcotic Enforcement of the Department of Justice to be held as evidence until a forfeiture has been declared or a release ordered."

out their being allowed to search it, "even for their own protection." *Id.* at 61, 87 S.Ct. 788.

Although it may not have been reasonable to require the officers in *Cooper* to hold the car for an indefinite time without search, it also would not have been unreasonable to require that they obtain a search warrant. Therefore, the *Cooper* opinion may have been undermined by the later opinion in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), wherein the Supreme Court emphasized that a warrantless search could not be justified unless the state sustained the burden of showing an affirmative reason for not obtaining a search warrant.[5] Of remarkable significance is the fact that the Supreme Court seized upon the opportunity, in *Chimel,* to express its latest opinion concerning the legality of automobile searches. It noted its thinking that its disposition of *Chimel* was consistent with the allowance of a search of a vehicle "where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought." *Id.* at 764 n. 9, 89 S.Ct. at 2040. The sharp limitation of this language is inconsistent with the *Cooper* rationale, which would have allowed the search of a vehicle not about to be "moved out of the locality or jurisdiction."

Even assuming, however, that the *Cooper* rule remains viable, the situation presented here is not within its ambit. Ramon's vehicle was in police custody at the time of the search. In *Cooper,* the Court stated:

"While it is true, as the lower court said, that 'lawful custody of an automobile does not of itself dispense with constitutional requirements of searches thereafter made of it,' * * * the reason for and *nature of the custody* may constitutionally justify the search." 386 U.S. at 61, 87 S.Ct. at 791 (emphasis added).

Although Ramon's parked automobile was in police "custody," there was nothing about the "nature of the custody" which presented any exigencies justifying neglect to secure a warrant. There had been no official action taken toward the institution of forfeiture proceedings, the car had not been officially impounded, and the officers were not under a mandatory duty to hold it. Lockett v. United States, 390 F.2d 168 (9th Cir. 1968), is not applicable. There we held that the formal step of impounding was not necessary because a federal statute imposed an obligation upon the arresting officers to seize the vehicle immediately and to retain its custody.[6] Here the Oregon statute did not authorize seizure of a vehicle until after contraband in the vehicle had been discovered.[7] In

---

5. While *Chimel* was handed down after the arrest in this case and this court has decided that *Chimel* is not retroactive, Williams v. United States, 418 F.2d 159 (9th Cir. Oct. 17, 1969), it is noteworthy that the *Cooper* opinion also issued after the search involved in this case was conducted. Thus, we possibly could treat this case in terms of prevailing principles of search and seizure without reference to the *Cooper* decision.

6. 49 U.S.C. § 782, in pertinent part:
   "Any vessel, vehicle, or aircraft which has been or is being used in violation of any provision of section 781 of this title, or in, upon, or by means of which any violation of said section has taken or is taking place, shall be seized and forfeited. * * * *"

7. Or.Rev.Stat. § 475.120:
   "*Seizure and forfeiture of conveyances used in transporting or possessing narcotics.* (1) Any district attorney, sheriff, deputy sheriff, constable or police officer charged with the enforcement of this chapter, having personal knowledge or reasonable information that narcotic drugs are being unlawfully carried or transported or possessed by any boat, vehicle or other conveyance, shall search the same without warrant and without any affidavit being filed. If he finds upon or in such conveyance, narcotic drugs unlawfully carried, transported or possessed, he shall seize them, arrest any person in charge of such conveyance and as soon as possible take the arrested person and the seized drugs before any court in the county in which the seizure is made. He

light of the difference between this statute and those which were applicable in *Cooper* and *Lockett,* we cannot see that the opinions in those cases should be controlling here.

Since Ramon's vehicle was not contraband seized and being held indefinitely under a statutory duty at the time of search, the legality of the search must be tested by those principles of search and seizure which are ordinarily applicable in the course of an investigation. Because both Ramon and his automobile were in custody at the time of the search, and because the search was remote from the arrest in time and place, our *Heffley* decision requires reversal.

Upon remand, the District Court may determine whether to grant Ramon's petition and order him discharged forthwith or whether to afford Oregon's prosecuting authorities a reasonable time, not exceeding thirty days, within which to conduct a new trial with the exclusion of the illegal evidence. The Clerk is directed to issue this judgment forthwith.

Reversed and remanded.

shall also, without delay, make and file a complaint for such violation as the evidence justifies.

"(2) Any such conveyance used by or with the knowledge of the owner or the person operating or in charge thereof in the unlawful transportation, or unlawful possession or concealment, of narcotic drugs within this state shall be forfeited to the state in the same manner, by the same procedure and with like effect as provided in ORS 471.660 and 471.665 for the forfeiture of conveyances used in unlawfully handling liquor."