**UNITED STATES of America**

v.

**Timothy W. MENKE.**

**Crim. No. 71–172.**

United States District Court,
W. D. Pennsylvania.

March 1, 1972.

**1024**

Jay C. Waldman, Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Warren R. Keck, III, Greenville, Pa., for defendant.

## OPINION

TEITELBAUM, District Judge.

The defendant in this criminal action, Timothy W. Menke, is under indictment on two counts: (1) knowingly receiving and concealing marihuana, after it had been unlawfully imported, knowing it to have been unlawfully imported, in violation of 21 U.S.C. § 176a, and (2) transporting and concealing marihuana obtained without the payment of the tax imposed by 26 U.S.C. § 4741(a), in violation of 26 U.S.C. § 4744(a) (2). Alleging various violations of various of his constitutional rights, he has filed a "Motion To Dismiss Indictment" and a "Motion To Suppress Evidence". A hearing has been held on the motions.

The motion to dismiss the indictment is based on the inordinately lengthy lapse of time between his arrest on February 12, 1970, his indictment on August 11, 1971, and at least December 17, 1971, when his motion was filed, at which time he had not been tried. At the hearing, the only evidence introduced with respect to this motion was by the defendant to establish that the delay was one for which he was in no way responsible. He testified that he was at all times available to be tried. His testimony was totally uncontroverted by the Government; neither rebuttal testimony nor testimony to offer a reason or justification for the delay was presented.

The motion to suppress is designed to suppress all the evidence seized in the course of a search of the defendant's bedroom and automobile. Much evidence was adduced with respect to the searches. It seems that on February 12, 1970, two agents of the United States Treasury Department, Bureau of Customs and Enforcement Division, acting on information received from their Seattle, Washington office, proceeded to a post office in New Castle, Pennsylvania, to inspect a parcel addressed to the defendant. The parcel was from one Kim Yijum of Korea and bore Korean mail-

ing registry number 62. At the post office, the agents, along with a postal inspector, opened the parcel, and after examination determined it to contain marihuana. Subsequently, the marihuana was repacked, the parcel rewrapped, and one of the agents effected a "controlled mail delivery" of it to the defendant by placing it at the mail box of the residence of his parents, with whom he lived. As his parents' residence was in the country, the mail box was located about 200 yards from the house.

Meantime, while the parcel was being delivered, the other agent went to the office of the local United States Commissioner to obtain a search warrant. The search warrant which was obtained authorized a search of the "premises" of the residence of the defendant's parents for "a quantity of marihuana". Thereafter, at approximately 4:12 P.M., the defendant drove to the mail box in an automobile which the agents knew to be owned by him, removed the parcel from the mail box, placed it in the trunk of his automobile, and proceeded to drive to the farmhouse. All of this was observed by the agent who, after effecting the delivery of the parcel, stationed himself so as to be able to survey the mail box and the house without detection. At approximately 5:00 P.M., the two reunited agents and the postal inspector, together with four state law enforcement officers, approached the house and identified themselves. Presently, the warrant was read to the occupants—the defendant, his father, mother and sister—the agents, inspector and officers were admitted to the house, and the defendant was given his Miranda warnings.[1] The agents and the postal inspector then searched the defendant's bedroom for the parcel. In the course of the search of the bedroom, the searchers found a Korean mailing registry slip which bore the number 62, a personal telephone book which contained the name and address of Kim Yijum and a list of prices of opium, hashish, marihuana and other narcotics. The search, which lasted approximately 15 minutes, failed however to uncover the parcel.

At this point, there is a substantial dispute as to what happened. The defendant testified that after the agents completed the unfruitful search of his bedroom, they took him outside and made him open the trunk of his automobile. He testified that he was not advised that he didn't have to open the trunk and that he opened it not knowing at the time whether or not he had a right to refuse to open it. On the other hand, one of the customs agents testified that during the course of the search of the defendant's bedroom, the defendant was invited by the other agent to disclose the whereabouts or the parcel which the defendant had been seen removing from the mail box and that in response to that invitation, the defendant volunteered that the parcel was in the trunk of his automobile and that he was willing to get it if the agents wanted it. Further, the agent testified that the defendant advised the agents that it would be easiest for him to open his trunk because it had a tricky lock. The parcel containing the marihuana was, by either account, found in the trunk.

The agents and the defendant are also in agreement on two other matters: (1) that the defendant was under arrest from the time the agents entered the farmhouse, and (2) that the defendant was not advised by the agents that he was not legally obligated to open the trunk of his automobile in the absence of a search warrant covering the automobile.

▮▮▮ In determining whether or not the defendant's right to a speedy trial has been abridged, it must be borne in mind that, "[T]he essential ingredient [of the right] is orderly expedition and not mere speed." Smith v. United States, 360 U.S. 1, 10, 79 S.Ct. 991, 997, 3 L.Ed.2d 1041 (1959). The factors commonly relevant to an application of the right are the length of the delay, the

1. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 604 (1966).

reason for it, the prejudice by it and the waiver of it. See Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970) (concurring opinion of Mr. Justice Brennan) and United States v. Varga, 3rd Cir., 449 F.2d 1280 (1971). Of these factors, prejudice is apparently the most important. Dickey v. Florida, supra, and United States v. Booz, 3rd Cir., 451 F.2d 719 (1971). And prejudice means actual prejudice to a defendant's ability to present an effective defense.[2] In *Dickey* it was held that a delay of more than seven years between the occurrence of the crime and the filing of the information was an unconstitutional delay. But the holding was based primarily and indispensibly on the "abundant evidence of actual prejudice" rather than on the sheer length of the delay. In *Booz* after noting the divergent approaches to the issue of "whether a showing of actual prejudice is required",[3] it was held that a defendant should be required to show actual prejudice, i. e., prejudice to his ability to present an effective defense, in order to establish a violation of his Sixth Amendment right. Thus, in this case, the void of evidence of prejudice to the defendant by the delay dictates the denial of his motion to dismiss the indictment.

■ In determining whether or not the defendant's Fourth Amendment rights have been violated, an important case is Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 364 (1971). In *Coolidge,* as in this case, the principal concern was with the legality of a search of an automobile.[4] There, the police after an intensive and open investigation of the accused concluded that they had probable cause to arrest him and make a search of his automobile, and therefore prudently obtained a separate warrant for the arrest and the search. Pursuant to the warrants the accused was arrested at his home and his automobile, which was parked in his driveway, was impounded and subsequently searched. At the trial, evidence obtained from the search of the automobile was admitted into evidence and the accused was convicted. The Supreme Court, ruling that the evidence obtained from the search of the automobile was inadmissible, overturned the conviction.

Preliminarily the Court determined the search warrant to have been invalidly issued. The Court then proceeded to consider whether or not the search was lawful notwithstanding the absence of a warrant and in the process comprehensively reviewed and restated the law of search and seizure. The review and restatement was bottomed on "the most basic constitutional rule in this area" *viz.,* quoting Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), that,

---

2. These prejudice principles seem, however, inconsistent with the conception of the Supreme Court in United States v. Marion, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), that the "major evils" against which the right to a speedy trial protects "exist quite apart from actual or possible prejudice to an accused's defense". In *Marion* it was suggested that of paramount importance was the interference of an arrest with an accused's liberty, his employment, his financial resources, his associations, his standing in the community, and his psychological well being. Cf. United States v. Dunn, 10 Cr.L. 2351 (1972), Tamm J.

3. A thorough review of this issue appears in the concurring opinion of Mr. Justice Brennan in *Dickey.*

4. In this case the defendant has also attacked the search of the house. However, as to that search, the agents had a valid search warrant covering the house and the articles seized during the course of that search were clearly seizable under the "plain view" doctrine, notwithstanding the fact that the warrant did not describe the registry slip and the address book as the property to be seized, and notwithstanding, further, the fact that the agents should have known of he possible presence of the registry slip before the warrant was obtained. See United States v. Henkel, 451 F.2d 777 (3rd Cir. 1971).

" . . . searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions."

In this case, the Government does not contend that the search of the automobile was conducted pursuant to a valid search warrant. The warrant to search the premises of the house of the defendant's parents made no mention of any automobiles. The Government contends, however, that the search of the automobile was lawful as within either of two of the "specifically established and well-delineated exceptions". The Government argues (1) that the agents had probable cause to search the defendant's automobile and, alternatively, (2) that they had the defendant's consent to search the automobile.[5]

■ In support of its first contention, the Government relies on Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) and Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970) for the proposition that a warrantless search of an automobile is lawful if it is made with probable cause. As stated in *Coolidge,* however,

"[T]he word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears."

It was explained in *Coolidge* that the underlying rationale of *Carroll* and its progeny was that probable cause would validate a warrantless search,

"where *it is not practicable to secure a warrant* because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought". [Emphasis supplied in Coolidge.]

The Court in *Coolidge* concluded that the exception relating to the search of an automobile obtains only if both (1) there is probable cause and (2) there are exigent circumstances. The Court decided that since the police had known of the probable role in the crime of the accused's automobile in advance of his arrest, the accused had been extremely cooperative throughout the investigation, and the accused's automobile was regularly parked in the driveway of his house, that the "opportunity for search was hardly 'fleeting'" and, therefore, that a warrantless search of the automobile was inimical to the Fourth Amendment.

■ Similarly in this case the agents were not confronted with "exigent circumstances". They knew approximately one hour before they searched the automobile of its role in the crime, the automobile all during that time was parked in the courtyard near the house which they were surveying, and there were surely enough law enforcement officials involved in the operation to make one expendable for the purpose of securing a search warrant covering the automobile. Furthermore, even after the arrest of the defendant there was ample opportunity to obtain a search warrant covering the automobile. As in *Coolidge,* "[T]here was no way in which he could conceivably have gained access to the automobile after the police arrived on his property." However probable the cause, the circumstances were not exigent and the search, therefore, illegal.

The issues which remain are that of whether or not the defendant consented to the search of his automobile and even if he did, whether or not the failure of

---

5. The other two exceptions, a lawful search incident to a valid arrest under Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) and a search pursuant to the "plain view" doctrine under *Coolidge,* are clearly unavailable to the Government even assuming the warrantless arrest to have been valid. (Wheth-er planned warrantless arrests are indeed valid is an issue which is presently under advisement by the Supreme Court in Johnson v. Louisiana, Docket No. 69–5035, (Argued January 12, 1972). In this case the validity of the arrest was not attacked.)

the agents to advise him of his right to refuse to allow a search of his automobile in the absence of a search warrant relating to the automobile nullifies the consent. First we will consider the latter issue.

██ While the Supreme Court has not expressly decreed that a warrantless consensual search is valid only if the subject of the search had been effectively advised of his right to refuse to consent to the search, it would seem axiomatic after Miranda v. Arizona, *supra*. The thread running through the principles of *Miranda* is that constitutional rights can only be waived when they are known. In *Miranda* it was reasoned as follows:

> "At the outset, if a person in custody is to be subjected to interrogation, he must first be informed in clear and unequivocal terms that he has a right to remain silent. For those unaware of the privilege, the warning is needed simply to make them aware of it—*the threshold requirement for an intelligent decision as to its exercise.*" [Emphasis supplied.]

It would seem that this principle should likewise protect the constitutional right to remain free from unreasonable searches and seizures. That right is certainly as sacred as the right to be free from compelled self-incrimination, and accordingly its protection should be equally solicitous.

██ To consent to a warrantless search is essentially and effectively to waive the right to remain free from warrantless searches. As stated in Bustamonte v. Schneckloth, 448 F.2d 699 (9th Cir. 1971),

> "[A]ny consent to the search, then, amounted to a waiver of a constitutional right and, to be effective, must meet the established standards for constitutional waiver."

Quoting from Cipres v. United States, 343 F.2d 95, 97 (9th Cir. 1965), cert.

den'd, 385 U.S. 826, 87 S.Ct. 58, 17 L. Ed.2d 62 (1966), the Court in *Bustamonte* observed those standards to be as follows:

> " . . . a waiver cannot be conclusively presumed from a verbal expression of assent. The court must determine from all the circumstances whether the verbal assent reflected an understanding, uncoerced, and unequivocal election to grant the officers a license which the person knows may be freely and effectively withheld . . . . "

In Schoepflin v. United States, 391 F.2d 390 (9th Cir. 1968), the Ninth Circuit further held that before a warrantless search can be consented to the subject of the search must know that he is free to withhold his consent. The idea that a waiver is meaningless unless it is with knowledge of the right which is waived is not a novel one. In *Schoepflin* it was pointed out that in Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), the Supreme Court deemed a waiver, at least in terms of constitutional rights, to be a "relinquishment or abandonment of a *known* right or privilege".[6] (Emphasis supplied.)

██ In this case, it is undisputed that the defendant was not advised of his right to withhold his consent to a search of his automobile. By the Government's version of the events leading to the search of the trunk of the defendant's automobile, the defendant was given only the ordinary *Miranda* warning before the search of the bedroom. And it made no mention of the right to withhold consent to a warrantless search, obviously because the agent had a search warrant extending to the house and at that time he undoubtedly intended to search only the house. It was when that search proved fruitless, that the agents devised to uncover the parcel, and having knowledge that it was originally placed in the trunk of the car, inquired

---

6. The Ninth Circuit seemed to have retrenched somewhat from this position in United States v. Noa, 443 F.2d 144 (9th Cir. 1971), without referring to *Schoepflin*, but *Bustamonte* came after *Noa*.

of the defendant as to where the marihuana was located. In the ensuing exchanges between the agents and the defendant, there was admittedly no mention of the defendant's right to refuse to allow the search of his trunk. This the defendant had a right to know; therefore, the failure of the agents to specifically advise him of his right to refuse to allow the search makes the search, and seizure, unreasonable and requires the suppression of the parcel of marihuana. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914).

 Government of Virgin Islands v. Berne, 412 F.2d 1055 (3rd Cir. 1969), cert. den'd, 396 U.S. 837, 90 S.Ct. 96, 24 L.Ed.2d 87 (1969), reh. den'd, 396 U.S. 937, 90 S.Ct. 261, 24 L.Ed.2d 239 (1969) and United States ex rel. Harris v. Hendricks, 423 F.2d 1096 (3rd Cir. 1970) are to be distinguished. In *Berne,* two searches were involved. In the first search, two police officers had a casual conversation with an unarrested suspect in his home, during which he disclosed the whereabouts of evidence of the crime of which he was later convicted. As not even the ordinary *Miranda* warnings were given to Berne, the Court, stating that when the validity of a search is conceived in the assent of an accused, the "vitality of the Fourth Amendment rights are critically dependent on the protective armor of the privilege against self-incrimination", wrestled primarily with the problem of whether or not the circumstances and conditions surrounding the disclosure were those which commanded the *Miranda* warnings. The Court opined that the conditions need not be those of the stationhouse, Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969), but need be more intimidating than a casual conversation with a mere suspect in his home, in which the suspect's freedom of action is not significantly restricted, and found that the *Miranda* warnings were not constitutionally necessary. In this case seven law enforcement officials invaded the residence of the defendant's parents, he was arrested, his freedom of action was restricted significantly, and his bedroom was thoroughly searched. Moreover, the accused was a young man recently released from military duty in Korea, reasonably uneducated, and presumably unsophisticated in matters of searches and seizures. The need for the *Miranda* warnings was clear.

The matter of whether or not Berne was entitled additionally to advice specifically of his right to refuse to consent to a warrantless search was considered by the Court with respect to the second search.[7] That search took place only after Berne, having been given the ordinary *Miranda* warnings, and having waived, in writing, his right to remain silent told the police where to find that incriminating evidence. While the Court found that the failure to advise Berne specifically of his Fourth Amendment rights was not constitutionally fatal to the admissibility of that evidence (primarily for the reason that he freely and voluntarily agreed to talk to the police), it was suggested that in an instance when the police lack evidence to sustain a conviction and, confronted

7. The distinction to be noted is that between (1) failure to advise an accused of his rights under *Miranda* and opening the possibility that a subsequent uttered disclosure of the location of incriminating evidence may have been self-incriminating statements induced contrary to the prohibitions of the Fifth Amendment, and (2) failure, even when an accused is advised of his expressed rights under *Miranda,* to specifically advise an accused of his right to remain free from warrantless searches and opening the possibility that a disclosure of the location, of incriminating evidence may have been induced contrary to the prohibitions of the Fourth Amendment. The fineness of this distinction was early observed in Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886). In *Boyd* the Supreme Court noted that the Fourth and the Fifth Amendments ran "almost into each other". See also Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 n. 5 (1961).

with an accused who refuses to be interrogated, "resort to the device of a consensual search to launch their case", "grave questions" could result. See also United States v. Blalock, 255 F.Supp. 268 (D.C.E.D.Pa.1966). In the instant case, the police were lacking the parcel of marihuana, were confronted at least with an accused who was certainly not as willing and eager to cooperate as Berne, and, indeed resorted to "consent" to search the automobile. Further, the suggestion in *Berne* would seem to apply with particular force in an instance in which the police conduct a search of one area which is authorized by a warrant and then proceed, when the evidence sought is not found, to search another substantially adjacent area in one continuous sweep. Any consent in those circumstances would seem to be presumptively colored by the aura of authority to search the adjacent area lent by the known authority to search the original area. Thus, in this case, the defendant should have been advised specifically of his Fourth Amendment rights.

Nor does *Harris* preclude this conclusion. In Harris, in which the principal problem was the defendant's right to the *Miranda* warnings, it was held that *Miranda* had no application as it was not retrospective. The further factual rejection of the application of the principle, then was *dictum* and even then was distinguishable on the basis of the circumstances of the accused's disclosure, including the accused's age, experience, intelligence and education. As to whether or not specific advice of the right to remain free from warrantless searches was required, the Court in *Harris* relied on *Berne* in finding in the negative, and *Berne*, as it applies to this case, has been found to be distinguishable.

Secondly, we consider the issue of whether, in fact, the defendant consented to the search. In *Berne* the Court stated, citing Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), that "consent is not merely acquiescence to a claim of lawful authority" and citing Judd v. United States, 89 U.S.App.D.C. 64, 190 F.2d 649 (1951), that "consent must never be equated to nonresistance to police orders or suggestions". In both *Berne* and *Harris* consent was found, but in neither was the accused under arrest. In *Harris* the defendant, further, was found to be sufficiently educated and sophisticated to appreciate his predicament and the waiver involved was found to be "not the product of an excessive display of police force or authority".

In the instant case there were seven law enforcement officers in the defendant's home, he was arrested, a search warrant was produced authorizing a search of the "premises", a thorough search was made of his bedroom and finally he was not overly educated or sophisticated in the ways of searches and seizures. We think that the defendant most probably merely acquiesced, particularly in the light of the known search warrant, however actually limited, and of the one continuous sweep of the search, to the agents' suggestion as to the location of the marihuana. In the instant circumstances, the questions as to the whereabouts of the parcel were of the same effect as a demand or order. The defendant's conduct, then, particularly absent knowledge of his right to refuse the search, cannot be construed to constitute consent.

In Bumper v. North Carolina, *supra*, it was held that when the Government seeks to establish the lawfulness of a search, it bears the burden of proving that the consent was, in fact, freely and voluntarily given, and that,

"[T]his burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority."

While in this case there was no claim made, explicitly, that the search of the automobile was made pursuant to the warrant, the circumstances, i. e., the "one continuous sweep", we think would tend to imply authority, especially since the warrant authorized a search of the "premises". In all the circumstances,

then, including the probability that the agents had surmised that the marihuana remained in the trunk of the automobile, we find that the Government has not met its burden, and therefore that the search was not in fact consensual.

An appropriate Order will be entered.